[No. 72438-5. En Banc.]
Argued February 13, 2003.    Decided May 8, 2003.

THE STATE OF WASHINGTON, *Respondent*, v. GERALD LEE WENTZ, *Petitioner*.

*David N. Gasch*, for petitioner.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

IRELAND, J. — Defendant Gerald Lee Wentz claims the State produced insufficient evidence to support his conviction for first degree burglary. At the close of his bench trial, the judge found that by entering a locked, six-foot high fence, Wentz had entered a building for the purposes of the burglary statute. The Court of Appeals affirmed. A "fenced area" is included in the statutory definition of building, and the statute is unambiguous. Therefore, we affirm.

## FACTS

On the evening of May 29, 1999, police responded to a residential alarm at Patrick Wheeler's home in Spokane. One of the responding officers, Deputy James Melton, found Wentz hiding in the backyard. The officer testified that Wentz said he took a pickup truck from his brother's home in The Dalles, Oregon, without permission that morning. He said he drove the truck to a friend's house and broke in, taking a handgun and some ammunition. Thus prepared, he drove to Spokane, where he intended to confront[1] his ex-wife and sometime girl friend, Janet McFadden, and her new boyfriend, Wheeler.

Wentz told police that upon arriving in Spokane, he proceeded to Wheeler's house, noting McFadden's car in the driveway. He also confirmed that she was there by calling and hanging up when she answered. Parking the truck in a lot a few blocks away, he then walked by and around the house several times. He waited for nightfall before trying to enter Wheeler's home.

Meanwhile, unbeknownst to Wentz, his brother telephoned McFadden in Spokane. Thereafter, she immediately fled, driving back to The Dalles. Wheeler was working a 24-hour shift. Consequently, the house was empty when Wentz arrived.

Officer Melton testified that Wentz told him he climbed the fence into the backyard and found an unlocked sliding door. When he slid it partway open, an alarm sounded. Instead of going into the house, he hid in the boat that was parked on a trailer in the backyard. He decided to wait under the boat's cover until McFadden and Wheeler returned.

A six-foot solid wood fence surrounds the backyard. The fence has two gates, both of which were padlocked. Both Wentz and the police officer who apprehended him had to

---

[1] By "confront," Wentz told the police he meant to either shoot them and then himself, or shoot himself in front of them.

climb the fence to enter the backyard. Wheeler kept his boat inside the fence next to his house.

Wentz was arrested and charged with two counts of attempted second-degree murder, one count of possession of a stolen firearm, one count of possession of stolen property other than a firearm, and one count of first-degree burglary. At the close of the trial, the judge found Wentz guilty beyond a reasonable doubt on all counts. The Court of Appeals, Division Three, affirmed the convictions. We granted review solely as to the burglary count.

## ISSUES

Is the term "fenced area" in the statutory definition of "building" in RCW 9A.04.110(5) subject to the main purpose test announced in *State v. Roadhs*, 71 Wn.2d 705, 707-09, 430 P.2d 586 (1967)?

Do the qualifying words "used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods" apply to the term "fenced area" in RCW 9A.04.110(5)?

## ANALYSIS

A. Standard of Review

We are asked to determine the correct construction of "fenced area" in the statutory definition of building in RCW 9A.04.110(5). Construction of a statute is a question of law that we review de novo under the error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). This court has the ultimate authority to say what a statute means. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). However, we are under an obligation to give effect to the intent of the legislature, and where the language of a statute is clear, legislative intent is derived from the language of the statute alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994).

## B. Former Statutory Construction

■ Whether Wentz had entered Wheeler's *home* was a factual dispute at trial, but the trial court made no finding he had. It nonetheless concluded that Wentz was guilty of first degree burglary based, in part, on the following written findings of fact:

19. [The backyard] was secured by a six foot solid wood fence with locked gates . . . . Deputies then checked the back yard and discovered the defendant . . . [hiding] in the yard armed with a Colt .357 revolver and 21 rounds of ammunition.

. . . .

33. On May 29, 1999 around 9:23 p.m., the defendant, armed with the Colt firearm, jumped over the locked fence into the secured back yard . . . .

34. The defendant opened the rear, basement sliding glass door of the house . . . which tripped the security system and caused an alarm to sound.

35. When the security alarm sounded, the defendant hid himself in the boat in the fenced backyard under a tarp to await [their] return . . . .

. . . .

68. On May 29, 1999, the defendant had the specific intent required to commit the offense of first degree burglary and did enter and remain unlawfully on the premises or in the building . . . with the intent to commit a crime against a person or property therein, and, in entering and while on or in such building or premises and in immediate flight therefrom was armed with a deadly weapon . . . .

Clerk's Papers (CP) at 33, 36-37, 44. Wentz challenges the sufficiency of these findings to support his first degree burglary conviction. To determine whether the evidence is sufficient to sustain a conviction, we view the evidence in the light most favorable to the prosecution and ask whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

The trial court entered no written findings regarding whether the fence around Wheeler's backyard was erected mainly for the purpose of protecting property therein, the test announced in *State v. Roadhs*. The issue in *Roadhs* was whether a defendant who unlawfully entered a fenced area could be charged under the burglary statute. Defendant and two other men were apprehended within a public utility district warehouse compound. The compound was fully enclosed by building walls and a cyclone fence topped by barbed wire. The men had cut the barbed wire and climbed over the fence. Defendant was convicted of second degree burglary. He appealed, claiming that the enclosure was not a building under the burglary statute. The second degree burglary statute in effect at the time provided:

> Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of *any building* or part thereof, or a room or *other structure wherein any property is kept for use, sale or deposit*, shall be guilty of burglary in the second degree . . . .

Former RCW 9.19.020 (1909) (emphasis added). As the statute addressed unlawful entry into either a building or a structure, the court first analyzed whether a fenced area was a building. The statutory definition of "building" stated:

> The word "building" shall include every house, shed, boat, watercraft, railway car, tent or booth, whether completed or not, suitable for affording shelter for any human being, or as a place where any property is or shall be kept for use, sale or deposit.

Former RCW 9.01.010(18) (1909). Because the statute listed specific items, the court reasoned that the omission of "fenced area" from the building definition was intended by the legislature. *Roadhs*, 71 Wn.2d at 707-08 (citing the statutory construction principle, "expressio unius est exclusio alterius").

The court then turned to the issue of whether a fenced area was a structure. "Structure" was not defined by statute. The court reasoned that the ordinary meaning of "structure" was very broad, conceivably applying to anything from "a building" to "an apple box." *Id.* at 708. Therefore, the court interpreted the general term, "structure," in a manner consistent with the specific term, "building." *Id.* (citing the statutory construction principle "noscitur a sociis"). In doing so, it concluded that:

> Were the fence a mere boundary fence or one erected for the *sole* purpose of esthetic beautification, it would not constitute a "structure" as that term was intended to be interpreted by the legislature. However, where the fence is of such a nature that it is erected mainly for the purpose of protecting property within its confines and is, in fact, an integral part of a closed compound, its function becomes analogous to that of a "building" and the fence itself constitutes a "structure" subject to being burglarized.

*Id.* at 708-09. This became the test to analyze whether a defendant who entered a fenced area had entered a "structure" and could, therefore, be convicted of burglary. *State v. Livengood*, 14 Wn. App. 203, 209, 540 P.2d 480 (1975) (quoting *Roadhs*, 71 Wn.2d at 708-09).

In 1975, the legislature enacted a new criminal code, Title 9A RCW. Laws of 1975, 1st Ex. Sess., ch. 260. This legislation made sweeping changes to the burglary laws. The statutory definition of "building" now reads:

> "Building", in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods . . . .

RCW 9A.04.110(5). Under the current statutory scheme for burglary, the most serious offense is first degree burglary:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight there-

from, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

RCW 9A.52.020(1). The less serious offenses are those in which the person neither has a deadly weapon nor commits assault. Ch. 9A.52 RCW. In those cases, the person who enters or remains unlawfully in a building and has the intent to commit a crime against a person or property therein is charged according to the building entered. *Id.* Thus, if the intent element is satisfied, entry into a dwelling is residential burglary under RCW 9A.52.025(1); entry into a vehicle is vehicle prowling under RCW 9A.52.095-.100; and entry into a building other than a dwelling or a vehicle is second degree burglary under RCW 9A.52.030(1).

"Fenced area" is now expressly included in the "building" definition. RCW 9A.04.110(5). Despite the amendment, the Court of Appeals continued to apply the *Roadhs* main purpose test for determining whether a fence constitutes a "structure" for purposes of the former burglary statute.[2] This approach fails to track the 1975 legislative change, as the current statutory scheme dispenses with that analysis. Therefore, when a person is charged under the current burglary statute for unlawfully entering or remaining in a fenced area, the State need not show that the fence was erected mainly for the purpose of protecting property within its confines.

### C. Current Statutory Language

We reject Wentz's argument that, even under the current statute, the fenced backyard at issue here is not a building. Wentz asserts that the language following the word "structure" in RCW 9A.04.110(5) modifies each of the named examples, including "fenced area." Therefore, according to Wentz, a fenced area must be "used for lodging of persons or for carrying on business therein, or for the use, sale or

---

[2] *See, e.g., State v. Flieger,* 45 Wn. App. 667, 670, 726 P.2d 1257 (1986), *overruled by State v. Wentz,* 110 Wn. App. 70, 73, 38 P.3d 393 (2002); *State v. Brenner,* 53 Wn. App. 367, 377, 768 P.2d 509 (1989); *State v. Gans,* 76 Wn. App. 445, 449, 886 P.2d 578 (1994). These are published Court of Appeals cases. Additional unpublished opinions also follow this reasoning.

deposit of goods," or else it is not a building capable of being burglarized. Before this case, the Court of Appeals had accepted the reading advocated by Wentz as correct: the modifying language following "any other structure" modifies all of the specific examples, not just "structure."[3]

■ We disagree. Under the last antecedent rule, "unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent." *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995). We determine legislative intent by evaluating the statute as a whole. *Dep't of Labor & Indus. v. Estate of MacMillan*, 117 Wn.2d 222, 229, 814 P.2d 194 (1991). When reading the statute as a whole, it becomes clear that the legislature did not intend for the qualifying language to refer to all of the antecedents. Such a reading would be unnecessarily limiting in the case of a "vehicle" or a "railway car."

For instance, consider the person who, armed with a deadly weapon, unlawfully enters the following hypothetical spaces with intent to commit a crime against a person or property therein. If we read the qualifying language to modify "vehicle," such a person who unlawfully enters a car that is not used for the noted purposes could only be charged with second degree vehicle prowling, a gross misdemeanor under RCW 9A.52.100. If that same person broke into a delivery van, he could be charged with first degree burglary, a class A felony, because the delivery van is used for the deposit of goods. Similarly, if that person broke into a train's engine car, he could not be charged with first degree burglary. However, it would be first degree burglary if he unlawfully entered a cargo car on the same train.

Because the statute evidences no contrary intention, the qualifying language in RCW 9A.04.110(5) modifies "structure" alone, as the last antecedent. Therefore, the State need not show that the fenced area was used for lodging of

---

[3] *See note 2, supra. See also State v. Couch*, 44 Wn. App. 26, 30-31, 720 P.2d 1387 (1986) (discussing "fenced area" in RCW 9A.04.110(5) although the case did not concern a fenced area).

persons or for carrying on business therein, or for the use, sale or deposit of goods when prosecuting a person for burglarizing a fenced area.

■ ■ Unlike some of the other terms in RCW 9A.04.110(5),[4] "fenced area" has no statutory definition. Absent a contrary legislative intent, we give a term that is not defined by statute its ordinary meaning. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992). The ordinary meaning of "fenced area" clearly encompasses the backyard in this case.

The evidence is sufficient to sustain Wentz's conviction. The trial court found that Wheeler's backyard was surrounded by a six-foot, solid wood fence with padlocked gates. It was secured such that both Wentz and the officer who apprehended him had to climb over the fence to enter the backyard and to gain access to the sliding door. Wentz was discovered in the boat stored within the locked fence. Under these facts, a rational fact finder could have found beyond a reasonable doubt that Wentz entered a fenced area, and therefore a "building."

Because we affirm the conviction, we need not reach the State's argument that it has sustained its burden on the lesser-included offense of attempted first degree burglary.

## CONCLUSION

We hold that the term "fenced area" in RCW 9A.04.110(5) is not subject to the test announced in *Roadhs* in order to determine whether it is a building subject to being burglarized, as that case analyzed a separate question under the previous burglary statute. In addition, the language following "structure" in RCW 9A.04.110(5) does not modify

---

[4] For example, "dwelling" is defined in RCW 9A.04.110(7), and "vehicle" in RCW 9A.04.110(26).

"fenced area." The cases that hold otherwise are overruled. The decision by the Court of Appeals in this case is affirmed.

ALEXANDER, C.J., and BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

MADSEN, J. (concurring) — The majority appears to hold that under the plain language of RCW 9A.04.110(5), any and all areas enclosed by a fence are within the definition of "building" for purposes of the burglary statutes. Entry into any such area with the intent to commit a crime against a person or property therein would, accordingly, constitute burglary. I am concerned with this analysis, because when read together as a whole, the burglary statutes and the definition of "building" in RCW 9A.04.110(5) show that the legislature intended a more restrictive view of "fenced area."

The majority reaches its result using a two-part analysis. The majority first explains why the analysis in *State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967) no longer applies, i.e., both the definitional and burglary statutes have been rewritten. Second, the majority concludes that under the last antecedent rule certain limiting language in RCW 9A.04.110(5) applies only to the term "any other structure" and does not apply to other terms in the statute, including "fenced area."

Assuming, for purposes of the analysis, that the majority correctly applies the last antecedent rule, its holding is nonetheless too broad, given obvious legislative intent. Nevertheless, because I agree that the fenced area at issue in this case falls within the statutory definition under a proper analysis, I concur in the majority's result.

## ANALYSIS

RCW 9A.52.020(1) provides in part that one is guilty of first degree burglary "if, with intent to commit a crime against a person or property therein, he or she enters or

remains unlawfully in a building . . . ." "Building" is defined in RCW 9A.04.110(5), which states in part that " '[b]uilding', in addition to its ordinary meaning, includes any dwelling, *fenced area*, vehicle, railway car, cargo container, or any other structure . . . ." (Emphasis added.) RCW 9A.04.110(5) itself does not contain any language limiting the term "fenced area[s]." The majority opinion reasons that the statute's plain language is clear and, the majority indicates, any fenced area falls within the definition of "building."

The meaning of a statute is a question of law reviewed de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). The court's fundamental objective is to ascertain and carry out legislative intent. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). Words used in a statute must be considered in the context of the general object, purpose, and subject matter of the statute in order to give effect to that intent. *Strenge v. Clarke*, 89 Wn.2d 23, 569 P.2d 60 (1977). If the statute's meaning is plain on its face, then the court must give effect to that plain meaning in order to effectuate legislative intent. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). Further, under the " 'plain meaning' rule, examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found, is appropriate as part of the determination whether a plain meaning can be ascertained.' " *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002) (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002), and citing *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 708-09, 985 P.2d 262 (1999)). In addition, a reading that produces absurd results must be avoided because it will not be presumed that the legislature intended absurd results. *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983); *State v. Gaines*, 109 Wash. 196, 200, 186 P. 257 (1919); *see also State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

Contrary to the majority's approach, the statutory definition of "building" in RCW 9A.04.110(5) must not be read

in isolation. Instead, it must be read together with the burglary statutes. RCW 9A.52.020(1) requires that one must *"enter*[ ]*"* or *"remain*[ ] . . . *in a"* building with intent to commit a crime *"against a person or property"* and that the intended crime is one against a person or property *"therein."* (Emphasis added.) This language contains a wealth of information about legislative intent that is not considered by the majority. First, the words "enter" and "remain . . . in a" building, as well as the intent to commit a crime against a person or property "therein," show that like burglary involving a building in its ordinary sense, burglary involving other places contemplates a contained or enclosed space.

This principle was recognized in an early Washington decision where the issue was whether a railroad flatcar was within a burglary statute that then, as now, included "railroad car" within the places subject to being burglarized. *State v. Petit*, 32 Wash. 129, 72 P. 1021 (1903). The defendant was charged with burglary for breaking and entering a flatcar loaded with bags of wheat covered by a canvas tarpaulin. The court held that the flatcar did not come within the statutory definition and was not a "railroad car" because it was not enclosed "so that an entry can be made." *Id.* at 130. The court said, in response to the State's contention, that the statute no longer required this common law component:

> The common-law definition of burglary is breaking and entering the dwelling house of another in the night time with intent to commit a felony. It is not true, we think, that by codific evolution the species has been entirely lost. While there has been an enlargement of the definition, the central idea which has obtained for hundreds of years, viz., the unlawful breaking and entering of some kind of an inclosed structure, has been retained . . . .

*Id.* at 131. All of the terms in the current definition of building lend themselves to this construction: "building," "dwelling, fenced area, vehicle, railway car, cargo container," and "any other structure." RCW 9A.04.110(5). Im-

portantly, the same words found in the first degree burglary statute, RCW 9A.52.020(1), that limit the place to a contained or enclosed space are found in the other burglary statutes as well. *See* RCW 9A.52.025, .030. These limiting words show legislative intent that an area bounded by a fence that does not create an enclosed or contained area is not a "building" for purposes of the burglary statutes. Thus, for example, a fence running only along the front of a lot separating it from the street does not create a fenced area constituting a building.

The burglary statutes also each contain language requiring the intent to commit a crime "against a person or property" therein. RCW 9A.52.020, .025, .030. This language is crucial, for it discloses the purpose of the burglary statutes—to prohibit and punish conduct creating a risk of or actual harm to persons and property within a building. In this connection, it is worthwhile to recall the historical antecedent to the present statutory offenses. At common law, the invaded structure had to be the dwelling house of another, and these requirements "were essential because common-law burglary found its theoretical basis in the protection of man's right of habitation. Blackstone wrote that burglary was a heinous offense because of its invasion of this right . . . ." 2 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13(c) (1986 & Supp. 2003). In addition, at common law, the intrusion also had to be at night, "the time when honest men might fall prey to criminals[,]" *id*. section 8.13(d), and the intended crime had to be a felony, *id*. section 8.13(e).

The common law theory of protection of persons in their places of habitat from serious danger from criminals remains as part of our burglary statutes. Early in this state's history, the court observed in *State v. Burton*, 27 Wash. 528, 531, 67 P. 1097 (1902), that the crime of burglary is not one involving a disturbance of the fee as realty, but rather a disturbance to the "habitable security."

The burglary statutes, of course, go well beyond common law burglary because they now prohibit and punish inva-

sions involving intent to commit crimes against property. Thus, the burglary statutes are intended to proscribe and punish conduct involving the risk of harm or actual harm to property, as well as persons.[5]

It is apparent, therefore, that not all fenced areas are, automatically, "buildings." First, as noted, they must enclose or contain an area (or be so situated as to complete an enclosed or contained area). In addition, the area enclosed cannot simply be realty. The fence must serve to circumscribe an area so as to protect property or people—to close off the space from unwanted intruders. Unlike the majority, I believe the underlying theory of the burglary statutes is the protection of persons or property and punishment for invasions that involve a risk of criminal harm or actual harm to persons or property. I do not believe the legislature intends that an impenetrable barrier is required, but there must be a barrier designed for the security of people or the contents of the enclosed area.

Accordingly, as the court determined in *Roadhs*, a mere boundary fence, or one erected solely for beautification, among other possibilities, would not be a building for purposes of the burglary statutes. However, this result does not flow from *Roadhs* or its analysis of statutes that no longer apply. Instead, it flows from the current statutes, which still retain the principle that protection of persons and property is the key to determining whether a fenced area is a "building." The analysis I propose here is determined, however, by following a path similar to that followed in *Roadhs*. The court there did not reach its conclusion about whether a fenced area was a building, or what kind of fence constituted a building, by examining the then-exist-

---

[5] In addition, as the statutory offenses have evolved, our legislature has departed from the common law offense in other ways. For example, as in virtually all other jurisdictions, the crime intended no longer need be a felony, rather, any intended crime suffices. This has been called a "sound position" because " 'an intrusion for any criminal purpose creates elements of alarm and danger to persons who may be present in a place where they should be entitled to freedom from intrusion.' " 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 8.13(e) (1986 & Supp. 2003) (quoting Model Penal Code § 221.1, cmt. at 75 (1980)).

ing statutory definition of "building." Instead, the court examined the burglary statute itself to find legislative intent.

Under my analysis, the fenced yard in this case is a building within the meaning of RCW 9A.04.110(5) and RCW 9A.52.020(1). It is surrounded by a six-foot high, solid wood fence secured by padlocks at both gates. The enclosed yard is immediately adjacent to the house and constitutes an extension of the habitable area for family or living purposes.[6]

Finally, a more limited holding than offered by the majority is also necessary because the plain meaning the majority ascribes to the statute may lead to absurd results. Imagine for example, an 18-inch high decorative picket fence around a garden area at the front of a home. If a passerby steps across with the intent to pick a flower, he or she has committed burglary in the second degree, a class B felony. Such a result was never intended by the legislature when it amended the definition of "building."

## CONCLUSION

Although I disagree with the majority's analysis because it does not consider the term "fenced area" in the context of the entire relevant statutory scheme, I agree that under the facts here the defendant, with the intent to commit a crime against persons therein, entered a fenced area that is a building under the burglary statutes. I would clarify, however, that a "fenced area" is a building within the meaning of the burglary statute only when the area is enclosed by a fence that provides security for persons or property within.

Johnson and Sanders, JJ., concur with Madsen, J.

---

[6] The fenced area also serves to protect property—for example, defendant was found hiding in a boat.