219 P.3d 978 (2009)
STATE of Washington, Respondent,
v.
Michael Deroun WILLIAMS, Appellant.
No. 37619-9-II.
Court of Appeals of Washington, Division 2.
November 9, 2009.
Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Michelle Luna-Green, Pierce Co. Pros. Attorney, Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
PENOYAR, A.C.J.
¶ 1 Michael Deroun Williams appeals his conviction for obstructing a law enforcement officer. Williams made false statements, including giving a false identity, to police officers who were investigating a theft. Williams argues that the obstruction statute, RCW 9A.76.020(1), applies only to obstructive conduct, not to obstructive speech. Williams also argues that he received ineffective assistance of counsel because his counsel failed to assert at trial that false statements to a police officer cannot serve as the basis for a conviction under RCW 9A.76.020(1). We affirm.

FACTS
¶ 2 On December 3, 2007, Williams asked Les Schwab Tires in Fife to install new tires and rims on his girlfriend Chelsey Pierce's Jeep Cherokee. Les Schwab installed the tires and rims, balanced the tires, and cut siping into the treads. The tires and rims cost $1,533.96. The total pre-tax cost of all products and services was $1,694.96.
¶ 3 Williams tried to pay with a check, but Les Schwab's check verification system declined the check. Williams then offered to get cash from the bank, stating that "he would be right back." Report of Proceedings (RP) (Jan. 31, 2008) at 26. Les Schwab's accountant, Heather Crawford, told Williams to leave the car and key with her until he returned.[1] Williams gave Crawford the key, but he drove off in the car.
*979 ¶ 4 Several hours later, Crawford realized that the vehicle was missing. She called the police after attempts to contact Williams were unsuccessful. Officer Thomas Vradenburg of the Fife Police Department responded. He obtained Pierce's address in Federal Way and asked the Federal Way police to investigate.
¶ 5 Officer Scott Parker of the Federal Way Police Department went to Pierce's residence, where he found Williams. They spoke in the doorway of Pierce's home. Williams informed Parker that his name was "Eric R. Williams," which is his brother's name, and he gave a false birth date. RP (Jan. 31, 2008) at 44. Williams told Parker that he "didn't have any identification on him," even though he had identification in Pierce's home. RP (Jan. 31, 2008) at 47.
¶ 6 When Parker asked Williams whether there was another way to determine his identity, Williams replied that his mother, grandmother, and aunt lived "down the street." RP (Feb. 4, 2008) at 22. Parker asked Williams to accompany him to a relative's house to verify his identity, but Williams stated that he did not know the addresses. At trial, Williams stated, "I had to, like, think about it for a second. No, if we go there then I can't be Eric Williams if we go there [sic] because they know what my name is, so I just was evasive with all their questions and my identity." RP (Feb. 4, 2008) at 22. Williams testified that he was evasive about his identity because he had an outstanding arrest warrant for violating community custody.
¶ 7 Williams admitted to Parker that he had taken the car from the Les Schwab lot. He then showed Parker the car. Williams stated that errands had prevented him from returning to pay Les Schwab before it closed.[2] Williams said that he had left Les Schwab a voice message about being late. Les Schwab, however, did not have a voice messaging system that allowed a person to leave a message.
¶ 8 Parker informed Vradenburg that he found the car and spoke to Williams. Vradenburg drove to Federal Way to speak to Williams. Williams again identified himself as "Eric Williams" and gave a false birth date. RP (Jan. 31, 2008) at 56. He told Vradenburg that he did not know his address or Social Security number and had no identification. He stated that Michael Williams was his brother. Vradenburg ran a license check and determined that the physical description of "Eric Williams" did not match Williams.
¶ 9 Vradenburg arrested Williams and transported him to Fife City Jail. Vradenburg asked the county jail staff to complete an "administrative booking" since there was a discrepancy in identity. RP (Jan. 31, 2008) at 60. This booking method uses names, fingerprints, and photographs to identify suspects.
¶ 10 After being held in a cell "for a while," Williams admitted his true name and birth date to a police officer. RP (Jan. 31, 2008) at 60. The officer relayed this information to Vradenburg, who discovered "Michael Williams" in the police records and noted that Williams had an outstanding warrant. Vradenburg asked jail officials to email Williams's booking photo, which he matched to the police records, thus enabling him to finally verify Williams's identity.
¶ 11 The State charged Williams with first degree theft,[3] making a false or misleading statement to a public servant,[4] and obstructing a law enforcement officer.[5] Following a bench trial on January 31 and February 4, 2009, the trial court convicted Williams on all charges. The court imposed standard range sentences of 25 months for theft and 365 days for each of the other two counts, all sentences to run concurrently. Williams now *980 appeals his obstructing a law enforcement officer conviction.

ANALYSIS

I. Obstructing A Law Enforcement Officer

A. Standard of Review
¶ 12 We review statutory construction de novo. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003). Our primary duty in interpreting statutes is to determine and implement the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. Wentz, 149 Wash.2d at 346, 68 P.3d 282. If the statutory language is susceptible to more than one reasonable interpretation, we may resort to other indicators of legislative intent, including legislative history, to resolve the ambiguity. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005).

B. RCW 9A.76.020(1)
¶ 13 A person is guilty of obstructing a law enforcement officer if the person "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1). A "[l]aw enforcement officer" includes city police officers. See RCW 9A.76.020(2); RCW 10.93.020(3).
¶ 14 "Hinder" means "to make slow or difficult the course or progress of." Webster's Third New Int'l Dictionary 1070 (2002). "Delay" means "to stop, detain, or hinder for a time . . . to cause to be slower or to occur more slowly than normal." Webster's at 595. "Obstruct" means "to be or come in the way of: hinder from passing, action, or operation." Webster's at 1559.
¶ 15 Williams argues that the crime of obstruction applies only to conduct that hinders, delays, or obstructs law enforcement. Williams's reading of the obstruction statute is inconsistent with the statute's ordinary meaning. The plain language of RCW 9A.76.020(1) does not treat conduct and speech differently. Rather, the statute criminalizes any willful act  verbal or nonverbal  that hinders, delays or obstructs a law enforcement officer acting within his or her official powers. A false statement to a police officer is as capable of hindering or delaying an officer's ability to investigate a crime as a physical act, such as fleeing the scene of a crime.
¶ 16 Indeed, Williams's false statements to Fife and Federal Way police officers illustrate that speech may obstruct an investigation as much as nonverbal conduct. Williams pretended to be his brother in order to avoid arrest on an outstanding warrant, and he falsely stated that he left a voice message with Les Schwab. Some of Williams's other assertions  such as that he did not know where nearby relatives resided  strain credulity, especially in light of Williams's open admission that he intended to be evasive in answering officers' questions. Williams's false statements delayed the officers' ability to identify him, the primary subject of a suspected theft, and to determine whether he intended to deprive Les Schwab of its products and services, the necessary mens rea for theft.[6] The statements forced Vradenburg to engage in additional law enforcement steps in order to identify Williams, including requesting an administrative booking and a booking photo. As a result, Williams's false statements hindered, delayed, and obstructed the criminal investigation.
¶ 17 Williams offers reasons to conclude that the legislature intended that conduct, but not speech alone, could be charged under the obstruction statute. These interesting arguments turn on legislative amendments to the obstruction statutes over the years, the arguably inconsistent case law surrounding those changes, and the enactment of RCW 9A.76.175, which specifically criminalizes false statements to a public servant. Because the obstruction statute's plain language and ordinary meaning is clear, we do not address these arguments. Wentz, 149 Wash.2d at 346, 68 P.3d 282.

*981 II. Ineffective Assistance of Counsel
¶ 18 The federal and state constitutions guarantee effective assistance of counsel. See U.S. Const. amend VI; Wash. Const. art. I, § 22. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient by an objective standard of reasonableness, and (2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice occurs when there is a reasonable probability that the outcome of the proceeding would have differed but for the deficient performance. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A defendant must overcome a strong presumption that counsel was effective. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
¶ 19 Williams argues that he received ineffective assistance because trial counsel failed to raise the statutory argument that he makes on appeal  namely, that speech alone cannot be charged under the obstruction statute.[7] Counsel's decision not to raise a non-meritorious statutory argument at trial is objectively reasonable given the argument's likelihood of failure. Thus, counsel's performance was not deficient and Williams's ineffective assistance claim fails.
¶ 20 Affirmed.
We concur: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] Williams later testified that Crawford told him only to leave a key and made no reference to the car. The trial court found that this testimony was not credible. Since Williams has not challenged any findings of fact, they are verities on appeal. State v. Moore, 161 Wash.2d 880, 884, 169 P.3d 469 (2007).
[2] The trial court found that Williams's testimony about being delayed by errands was not credible.
[3] RCW 9A.56.020(1)(a); RCW 9A.56.030(1)(a).
[4] RCW 9A.76.175.
[5] RCW 9A.76.020(1).
[6] Theft requires intent to deprive another person of her property or services. RCW 9A.56.020(1)(a). Williams's defense at trial was that he did not intend to deprive Les Schwab of its products and services.
[7] In closing argument, trial counsel only challenged the theft charge: "As [the State] pointed out, the charge to making a false or misleading statement to a public servant and obstruction of a law enforcement officer is not an issue." RP (Feb. 4, 2008) at 50.