FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8:31

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44746-1-II |
| Respondent, | |
| v. | |
| JESUS OLIVERA, JR., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — A jury found Jesus Olivera, Jr. guilty of first degree burglary and fourth degree assault. Olivera appeals the burglary conviction, arguing that there was insufficient evidence to support a finding that he unlawfully entered the motel room with the intent to commit a crime. Because sufficient evidence supports the first degree burglary conviction, we affirm.

## FACTS

In late 2012, Jon Ellison traveled to Westport, Washington to spend the Christmas holiday with his sister's family. Angela Ellison, Jon's[1] daughter, joined him in Westport. Both Jon and Angela rented rooms from The Islander motel. Jon's room was at the building's far left end of one wing and Angela's room was two doors down. There were no other motel patrons in

_____

[1] The first names of Jon and Angela Ellison are used for purposes of clarity.

that wing during Jon and Angela's stay. Jon and Angela spent Christmas Eve at Jon's sister's home. Jon left around 8:30 PM and returned to his motel room. Jon went to bed almost immediately and woke up at approximately 3:00 AM. Jon had trouble going back to sleep; he tossed and turned for approximately 45 minutes until he heard a vehicle with a muffler problem pull into the parking lot.

Jon was concerned by the idling vehicle outside his room at nearly 4:00 AM. He got out of bed and began to pass the television stand when the motel door "came flying through the room." Report of Proceedings (RP) (March 5, 2013) at 19. Jon saw a dark silhouette in the doorway. The person, later identified as Olivera, advanced further into the room until he was approximately eight or nine feet away from Jon. Olivera said nothing as he continued to advance. Fearing for his life, Jon approached Olivera and they began to wrestle. The two men struggled down the hallway. Jon and Olivera fell, Olivera bit Jon's left eyebrow, causing a serious laceration. Jon recounts that Olivera "kept on hollering [that] he drew blood" and that Olivera said that "he drew blood honor." RP (March 5, 2013) at 22. Olivera then left the room and wandered in the parking lot while Jon called 911.

After arriving, Westport Police Officer Steve Davidson located and arrested Olivera. As he placed Olivera in handcuffs, Officer Davidson asked Olivera whether he had anything on him that could cause an injury. Olivera blurted out that he had taken a lot of meth.

Olivera testified that as he drove near the jetty that morning, he heard screams for help. As he looped around the jetty's end, Olivera heard additional screams. He stopped in The Islander's parking lot and walked up to Jon's motel room door. Olivera again heard cries for help and thought the cries came from Jon's room. Olivera did not knock on the door or summon the night manager. Rather, Olivera kicked in the door to see what was going on. Olivera claims

2

Jon attacked him immediately after entering. Olivera bit Jon because Jon had Olivera's sleeves during the struggle and Olivera was afraid that Jon was going to hit him. Both Jon and Angela denied hearing calls for help.

The State charged Olivera with first degree burglary and fourth degree assault. A jury found Olivera guilty on each charge.[2] Olivera appeals his burglary conviction.

## ANALYSIS

Olivera argues that the State failed to prove that Olivera unlawfully entered or remained in the motel room with the intent to commit a crime. Olivera contends that the intent to commit a crime cannot be inferred from the circumstances based on the facts elicited at trial. Because sufficient evidence supports a finding that Olivera entered or remained unlawfully in the motel room with the intent to commit a crime, we affirm Olivera's conviction for first degree burglary.

### I. STANDARD OF REVIEW

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *Wentz*, 149 Wn.2d at 347). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence "'most strongly against the defendant.'" *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d 1052 (2012) (internal quotation marks omitted)

---

[2] Olivera does not challenge his fourth degree assault conviction.

(quoting *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993)), *review denied*, 177 Wn.2d 1022 (2013). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

## II. DISCUSSION

The crime of first degree burglary is codified by RCW 9A.52.020(1), which provides,

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

The State must therefore prove beyond a reasonable doubt that (1) Olivera entered or remained unlawfully in Jon's motel room, (2) Olivera entered or remained in the hotel room with the intent to commit a crime, and (3) Olivera was either armed with a deadly weapon or that Olivera assaulted a person. To clarify proof of the second element, the legislature adopted the following inference of intent:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

RCW 9A.52.040. A jury can properly infer intent as long as the instruction they are given indicates that the inference is merely permissive instead of mandatory.[3] Here, the jury was instructed as follows:

---

[3] Mandatory presumptions create problems of constitutional scope because of their potential for circumventing the State's burden to prove all elements beyond a reasonable doubt. *State v. Brunson*, 128 Wn.2d 98, 105, 905 P.2d 346 (1995).

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Clerk's Papers at 47. The instruction here clearly indicated that the inference is not mandatory. Therefore, if the jury determined that Olivera entered or remained in the motel room unlawfully, they could properly infer that he did so with the intent to commit a crime therein.[4] But an inference should not arise where there exist other reasonable conclusions that would follow from the circumstances. *State v. Jackson*, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989).

A person "enters or remains unlawfully" in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain. RCW 9A.52.010(5). Here, Olivera entered Jon's motel room unlawfully. Before the altercation on the morning of December 25, neither Jon nor Angela had ever met Olivera. Olivera was not registered as a guest at The Islander. Consequently, Olivera was not licensed, invited, or otherwise privileged to enter or remain in Jon's room.

Despite Olivera's contention that he responded to requests for help coming from Jon's room, he presented no corroborating evidence. The State's evidence, which we interpret strongly against the defendant, *Drum*, 168 Wn.2d at 35, demonstrates that Olivera was under the influence of methamphetamine when he kicked in the door to Jon's motel room. Olivera

---

[4] When a permissive inference is only part of the State's proof supporting an element and not the "sole and sufficient" proof of that element, due process is not offended if the prosecution shows that the inference "more likely than not flows from the proven fact." *State v. Deal*, 128 Wn.2d 693, 699-700, 911 P.2d 996 (1996). But when the inference is the only proof of intent to commit a crime, the State must prove that the intent flowed beyond a reasonable doubt from any proven fact. *Brunson*, 128 Wn.2d at 110. Here, neither party advances an argument as to which standard should apply, but it appears as though the inference is the only proof of intent, so we assume the State must prove intent beyond a reasonable doubt.

unlawfully entered the motel room and assaulted Jon, exclaiming that "he drew blood honor." RP (March 5, 2013) at 22. Olivera did not knock on the door before kicking it in, he did not seek out the manager, and, once inside the room, he did not ask Jon whether there was a problem or whether he was screaming for help. Moreover, neither Jon, who was awake approximately 40 minutes before Olivera's arrival, nor Angela heard anyone calling for help.

When faced with conflicting testimony, the jury had the opportunity to judge the credibility of witnesses. It determined that Olivera's version of the events was not believable. An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses. *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999). The inference that Olivera intended to commit a crime arose properly because there was no other reasonable conclusion following from the circumstances. *Jackson*, 112 Wn.2d at 876. Our role as the reviewing court "is not to reweigh the evidence and substitute our judgment for that of the jury." *State v. Notaro*, 161 Wn. App. 654, 671, 255 P.3d 774 (2011).

Moreover, "'[t]he jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference.'" *Jackson*, 112 Wn.2d at 875 (quoting *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943)). Here, the jury was instructed that it may infer that Olivera intended to commit a crime when he kicked in the motel room door under the influence of methamphetamine at nearly 4:00 AM. Olivera entered the room and advanced toward Jon, prompting Jon's attempted self-defense. Olivera then assaulted Jon in the ensuing struggle. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of the first degree burglary

beyond a reasonable doubt. *Drum*, 168 Wn.2d at 34-35. The evidence was sufficient to support Olivera's conviction.[5]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.
JOHANSON, A.C.J.

We concur:

LEE, J.

MAXA, J.

---

[5] Although *State v. Sandoval* is somewhat similar factually, it is distinguishable because it involved a due process challenge to a jury instruction which requires de novo review on appeal. 123 Wn. App. 1, 4, 94 P.3d 323 (2004). Here, Olivera challenges the sufficiency of the State's evidence which requires us to consider the evidence in a light most favorable to the prosecution. *Wentz*, 149 Wn.2d at 347.