

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38564-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACKIE LYNN DEAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jackie Lynn Dean and two others were convicted of second

degree burglary following their unsuccessful effort to steal a large crane hook block from

a fenced construction storage yard. Mr. Dean challenges the sufficiency of the evidence

to establish that he entered or remained unlawfully in a "fenced area" within the meaning

of RCW 9A.04.110(5), for two reasons. He contends the fenced yard was not the

curtilage of a building, which he argues is the statutory construction given to "fenced

area" in *State v. Engel*, 166 Wn.2d 572, 580, 210 P.3d 1007 (2009). Alternatively, he

argues that if not the curtilage of a building, a "fenced area" must be fully enclosed, and here, a panel of the fencing had been cut and spread open.

Mr. Dean's first challenge is identical to a challenge advanced by one of Mr. Dean's accomplices, which was rejected last year in *State v. Jodie Lee Dean*, No. 54673-6-II (Wash. Ct. App. Aug. 3, 2021), slip op. at 2 (unpublished).[1] We adopt the reasoning of that opinion in rejecting the first challenge.

We reject Mr. Dean's second challenge on the basis that substantial evidence established that the breach in the storage yard's fencing was recent and temporary, and that type of breach does not take the yard outside of the statutory meaning of "fenced area." We affirm.

FACTS AND PROCEDURAL BACKGROUND

At around 6:00 a.m. one summer morning, an employee of Northwest Steel & Pipe (Northwest) arrived at work and saw several unknown men (one of them Mr. Dean), a red pickup truck, and a large black flatbed truck outside the fence of Northwest's neighboring business, a construction storage yard owned by Atkinson Construction (Atkinson). The Northwest employee told his manager about the men's suspect presence and he, the manager, and a third Northwest employee drove to the scene to investigate. The interlopers had parked both trucks in an area that was partially blocked off by Jersey

---

[1] Available at https://www.courts.wa.gov/opinions/pdf/D2%2054673-6 -II%20Unpublished%20Opinion.pdf.

barriers, and the Northwest manager parked his SUV where it would block the only exit route.

While questioning the strangers about the reason for their presence, the Northwest employees noticed a large crane hook block that was partially loaded onto the lowered lift gate of the flatbed truck. Northwest's manager called 911. Realizing police had been summoned, one of the strangers fled and the others slid the hook block off the lift gate, got in their trucks, and asked Northwest's manager to move his SUV so they could leave. When the manager did not, Mr. Dean tried to leave anyway, driving the flatbed truck up to one of the Jersey barriers and attempting, unsuccessfully, to push it out of the way. When police arrived, Mr. Dean and the two others were detained.

Atkinson's yard was fenced, but the chain link panel next to where the flatbed truck had been parked had been cut from top to bottom and spread open. The breach was photographed by responding police officers, and the photograph to the right would later be offered at trial. Near the breach, on Northwest's side of the fence, was the large, 1,500 to 2,000 pound hook block



the men had been trying to load onto the lift gate of the flatbed truck. The hook block belonged to Atkinson, and had previously been stored on a pallet in Atkinson's storage yard. Responding police officers observed what appeared to be drag marks in the dirt and on the asphalt, suggesting that the hook block had been dragged from Atkinson's yard. They surmised that a steel cable connected to the flatbed truck was strong enough to pull the hook block without breaking.

Mr. Davis and the two others who had been caught (one of them Jodie Lee Dean) were jointly charged and tried for second degree burglary. The condition of the fencing around the yard was a focus of evidence and argument at trial. A senior construction manager for Atkinson described its storage yard as "fully fenced," testifying that it was "fenced with a chain-link type of fencing, all the way around," and that the fencing was "six to eight feet high with barrier fencing around the top of it." Report of Proceedings (RP) at 378. He testified that the fencing had "been broken into several times, so it's been pieced together throughout the years." RP at 402. He testified that Atkinson had "individuals that work in that yard at all times and they communicate with me if there's been any breaches in the yard." RP at 395. He testified that when its fencing was cut, Atkinson "typically" tried to repair it "the day that it's discovered." RP at 389. A project engineer for Atkinson also testified that the storage yard was "fully fenced," describing some of the fencing as "fence panels," and "[s]ome of it is more permanent." RP at 402.

4

Of the Atkinson and Northwest employees who testified at trial, only one, a Northwest employee, testified he had previously seen the breach through which the hook block was taken, and that was only the day before the attempted theft. Atkinson's senior construction manager had most recently been to the lot a week or two earlier, and the breach had not existed at that time.

The jury received pattern jury instructions that "[a] person commits the crime of burglary in the second degree when he or she enters or remains unlawfully in a *building* with intent to commit a crime against a person or property therein," and that for purposes of the crime, "[*b*]*uilding*, in addition to its ordinary meaning, includes any *fenced area*." Clerk's Papers (CP) at 18, 23 (emphasis added). "Fenced area" was not defined.

At the conclusion of the evidence, the jury found the three defendants guilty as charged.

Mr. Dean appeals. This Division Three panel considered the appeal without oral argument after receiving an administrative transfer from Division Two. Before the date for hearing this appeal, Division Two filed its opinion in the appeal filed by Jodie Lee Dean.

ANALYSIS

Mr. Dean contends the evidence was insufficient to support an essential element of second degree burglary: that on the charging date, he "enter[ed] or remain[ed] unlawfully in a building other than a vehicle or a dwelling." *See* RCW 9A.52.030(1); CP at 18. As

5

relevant here, RCW 9A.04.110(5) provides that "'Building,' in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein."

When a defendant challenges the sufficiency of the evidence, he or she admits the truth of all the State's evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Id.* "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against" the defendant: here, Mr. Dean. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

I.     WE REJECT MR. DEAN'S *ENGEL*-BASED ARGUMENTS FOR THE REASONS EXPLAINED IN *JODIE LEE DEAN*

Mr. Dean argues that the controlling construction of our Supreme Court in *Engel* limits the meaning of "fenced area" to the curtilage of a building. There is language in *Engel* that, read in isolation, might be read to impose that categorical limitation on the meaning of "fenced area." But in *Jodie Lee Dean*, a Division Two panel persuasively reasoned that since *Engel* did not retreat from the Supreme Court's earlier decision in *State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282 (2003), *Engel*'s "curtilage" limitation applied only because the real estate in *Engel* was only partially enclosed by fencing.

As more fully detailed in *Jodie Lee Dean*, "*Wentz* established that the ordinary meaning of 'fenced area' clearly includes an area that is completely surrounded by a fence." *S*lip op. at 5 (citing *Wentz*, 149 Wn.2d at 352). By contrast, *Engel* involved an industrial yard that was bordered by some natural slopes, but only a third of which was fenced. Because "fenced area" is undefined and could be construed to have a broad or narrow meaning, the *Engel* court looked to the common law in arriving at when a partially-fenced area is sufficiently building-like. It limited such areas by the concept of curtilage to "avoid[ ] absurd results," noting that under the much broader meaning advocated by the State,

> would-be petty criminals who trespass might be liable for burglary even if the property line at their point of entry were unfenced and unmarked, even if they remained on the property without approaching any buildings or structures, and even if the property were such that they could enter and remain without being aware that it was fenced. Such examples are well outside the category of offenses the legislature intended to punish as burglary.

166 Wn.2d at 580.

*Jodie Lee Dean* concluded that *Engel*'s curtilage limitation did not apply to Jodie Lee Dean's prosecution because Atkinson's construction yard was fully fenced. Slip op. at 6. Even if it were not, the opinion observed that several large Conexes in Atkinson's storage yard qualified as "cargo containers," which are themselves included in RCW 9A.04.110(5)'s definition of "building" and for which the yard served as curtilage.

7

*Id.* at 7.  We adopt the reasoning of *Jodie Lee Dean* and reject Mr. Dean's curtilage-based challenge to his conviction.

II.     THE CONVICTION CAN ALSO BE AFFIRMED EVEN IF THE CONEXES DID NOT QUALIFY THE STORAGE YARD AS CURTILAGE

Mr. Dean raises a second challenge, not addressed by Division Two, that because of the breach, Atkinson's storage yard was *not* fully fenced.  We hold that on the facts of this case, the breach in the storage yard's fencing would not prevent it from qualifying as a "fenced area" within the meaning of RCW 9A.52.030(1) even if the Conexes located in the yard did not qualify the yard as curtilage under *Engel*.

Viewed in the light most favorable to the State, the evidence established that apart from the breach, the storage yard was entirely surrounded by six to eight foot fencing, with barrier fencing on top.  Atkinson's witnesses testified that employees were on site at the yard at all times, and that any breach in the fencing was reported and promptly repaired.  There was no evidence that anyone observed the hole in the fencing anytime earlier than the day before Mr. Dean and his accomplices were caught attempting to purloin the hook block.

As explained in *Engel*, its concern was that upholding "an overly broad definition of 'fenced area' would extend criminal liability beyond what is warranted," subjecting an individual to a felony conviction "even if the property were such that they could enter and remain without being aware that it was fenced."  166 Wn.2d at 580-81; *and see*

*Wentz*, 149 Wn.2d at 357 (Madsen, J., concurring) ("I do not believe the legislature intends that an impenetrable barrier is required, but there must be a barrier designed for the security of people or the contents of the enclosed area."). Here, the intent to fully fence the storage yard was apparent. There was only one breach, which the evidence establishes would have existed for only a short time, and which would reasonably be recognized as illicit. The evidence was sufficient to prove that the fenced area in this case qualified as a building under the reasoning of *Wentz*.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Fearing, J.

9