IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83913-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| AUTUMN LYNN HARTLEY, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — After a bench trial on stipulated facts, the trial court concluded that Autumn Hartley "entered and remained unlawfully in the building of a tow yard" and found her guilty of second degree burglary. Hartley argues the State failed to present sufficient evidence for conviction because the fenced tow yard is not a building for the purposes of the burglary statute. Hartley is incorrect. The statutory definition of "building" specifically includes "fenced area." Because sufficient evidence supports that Hartley entered and remained unlawfully in the fully fenced tow yard, we affirm.

FACTS

In 2017, the State charged Hartley with one count of second degree burglary and one count of attempted theft of a motor vehicle after she entered a tow yard enclosed by a locked 8 to 10 foot high fence. Hartley entered into a Therapeutic Alternatives to Prosecution (TAP) agreement, which stayed the proceedings. She agreed that if terminated from the program, she would be tried in a bench trial on stipulated facts.

Hartley had success in the TAP program at first, but fell out of compliance and was terminated. Per the agreement, the court conducted a bench trial on stipulated

facts. The court found that Hartley "entered and remained unlawfully in the building of a tow yard," which resulted in a conviction for second degree burglary.[1] Hartley appeals this conviction.[2]

## DISCUSSION

Hartley argues the State failed to present sufficient evidence for a conviction on second degree burglary because the fenced tow yard was not a "building" within the meaning of the statute. "Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt." State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences therefrom. Id. at 849.

Hartley was convicted after a bench trial on stipulated facts, and she does not dispute the facts. Rather, she challenges the legal interpretation of the tow yard as a "building" for the purposes of second degree burglary under RCW 9A.52.030.

Statutory construction is a question of law reviewed de novo. State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). We "give effect to the intent of the legislature, and where the language of a statute is clear, legislative intent is derived from the language of the statute alone." Id. at 346. We discern the plain meaning of a statutory provision

---

[1] Hartley was also convicted of attempted theft of a motor vehicle, but that conviction is not at issue on appeal.

[2] In her initial brief, Hartley also appeals the court's imposition of community custody supervision fees. In response, the State correctly noted that the court did not order, and the judgment and sentence does not include, community custody or any associated fees. Moreover, neither second degree burglary nor attempted theft of a motor vehicle are crimes for which a court can impose community custody. RCW 9.94A.701. In her reply brief, Hartley withdrew her claim concerning supervision fees.

from the ordinary meaning of the language at issue, the context of the statute, related provisions, and the statutory scheme as a whole. State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

As required, we begin with the language of the statute at issue. "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030. While the burglary statute does not define "building," the criminal code provides a definition in RCW 9A.04.110(5):

> "Building," in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods; each unit of a building consisting of two or more units separately secured or occupied is a separate building.

The plain language of this statute includes "fenced area" within the definition of a "building."

The Washington State Supreme Court confirmed this reading of the statute: " 'Fenced area' is now expressly included in the 'building' definition." Wentz, 149 Wn.2d at 350. In Wentz, the "fenced area" was the backyard of a house surrounded by a six-foot solid wood fence with two padlocked gates. Id. at 345. The Court rejected Wentz's argument that "fenced area" was modified by the language after the word "structure." Id. at 352. The Court concluded that a rational fact finder could have found beyond a reasonable doubt that the defendant "entered a fenced area, and therefore a 'building.' " Id.

Despite the statute's express inclusion of "fenced area" within the definition of "building," and the application of the plain language in Wentz, Hartley contends "[t]he tow yard did not qualify as a 'building' under the statute as interpreted by the Washington Supreme Court because it did not fall under the common-law concept of 'curtilage.' "[3] This argument stems from a subsequent interpretation of "fenced area" in Engel, 166 Wn.2d at 580.

Engel involved a partially fenced business, with one-third of the property fenced by a chain link fence topped with barbed wire and the other two-thirds of the property "encased" by high banks that sloped both up and down from the property. Engel, 166 Wn.2d at 574-75. The defendant in that case specifically argued "that 'fenced area' is an area totally enclosed by a fence." Id. at 578.

In considering whether the partially fenced business was a "fenced area," the Court turned to the plain language of the statute but found no clear answer. Id. at 579. According to the Court, "because the ordinary meaning of 'fenced area' encompasses areas both partially and totally enclosed by a fence, we look to the phrase's context to determine its plain meaning." Id. The Court also considered common law to ascertain the meaning of "fenced area" in the burglary context. Id. (citing RCW 9A.04.060).[4] After examining the common law, the Court reasoned that "fenced area" was a contemporary formulation of the concept of curtilage. Engel, 166 Wn.2d at 580.

---

[3] App. Op. Brief 4. "Curtilage" is "[t]he land or yard adjoining a house, usu. within an enclosure." BLACK'S LAW DICTIONARY 482 (11th ed. 2019).

[4] RCW 9A.04.060 provides that courts may supplement criminal statutes with consistent common law provisions. Engel, 166 Wn.2d at 579.

> The common law context indicates that the plain meaning of "fenced area" is limited to the curtilage of a building or structure that itself qualifies as an object of burglary (as defined in RCW 9A.04.110(5)). The curtilage is an area that is completely enclosed either by fencing alone or, as was the case in Wentz, a combination of fencing and other structures.

Id. at 580.

Here, Hartley contends that this interpretation requires the "fenced area" to "fall under the common-law concept of curtilage of a building or structure that itself qualifies as an object of burglary." But Hartley ignores that under the plain language of RCW 9A.04.110(5), a "fenced area" is a "building" that qualifies as an object of burglary, as Wentz also makes clear. 149 Wn.2d at 350. Engel acknowledged Wentz, and reached the concept of curtilage only in order to determine whether the burglary statute applied to a partially, rather than completely enclosed, fenced area.[5] 166 Wn.2d at 577.

Moreover, the Engel Court determined that the idea of curtilage prevented an absurd result wherein a trespasser might be liable for burglary "even if the property line at their point of entry were unfenced and unmarked, even if they remained on the property without approaching any buildings or structures, and even if the property were such that they could enter and remain without being aware that it was fenced." 166 Wn.2d at 580. This concern does not arise when the property is fully fenced.

The evidence in the record establishes that the tow yard was fully enclosed by a locked, 8 to 10 foot tall fence. Under the plain language of RCW 9A.04.110(5), this

---

[5] Two unpublished cases that arise from the same set of facts, but involved different defendants, rejected the same argument Hartley makes and concluded that Engel did not limit "fenced area" to a curtilage of a building. State v. Dean, slip op. 54673-6 at 4-7 (Wash. Ct. App. Aug. 3, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054673-6-II%20Unpublished%20Opinion.pdf; State v. Dean, slip op. 38564-7 at 6-7 (Wash. Ct. App. March 29, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/385647_unp.pdf.

"fenced area" is a "building." Therefore, a rational trier of fact could find that Hartley "enter[ed] or remain[ed] unlawfully in a building other than a vehicle or a dwelling" as required for conviction under RCW 9A.52.030. Sufficient evidence supports the conviction on second degree burglary.

Affirmed.

_Cheung, J._

WE CONCUR:

_Birk, J._                    _Smith, C.J._