247 P.3d 11 (2011)
STATE of Washington, Respondent,
v.
Bradley J. JOHNSON, Appellant.
No. 39607-6-II.
Court of Appeals of Washington, Division 2.
February 1, 2011.
*12 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Gerald R. Fuller, Grays Harbor Co. Pros. Ofc., Montesano, WA, for Respondent.
*13 QUINN-BRINTNALL, J.
¶ 1 On July 28, 2008, Elma Police Officer Anthony Duane Hayden caught Bradley Johnson removing copper from a locomotive in the Puget Sound Pacific Railroad yard in Elma, Washington. A jury found Johnson guilty of second degree burglary, in violation of RCW 9A.52.030, as charged. Johnson appeals his conviction, arguing that (1) a locomotive is not a railway car and that, therefore, insufficient evidence supports the jury's verdict; and (2) the trial court erred by admitting a receipt found on Johnson at the time of his arrest showing that the day before his arrest in the railroad yard, he had sold 105 pounds of copper wire to Valley Recycling, Inc. Holding that a locomotive is a railway car, and thus meets the statutory definition of a "building" for purposes of second degree burglary, and that the trial court properly admitted the copper wire receipt as relevant evidence of Johnson's intent, we affirm.

DISCUSSION
¶ 2 Resolving the issues presented in this appeal requires that we answer three questions. First, is a locomotive a "railway car" and, as such, a "building" as defined in RCW 9A.04.110(5). Second, whether the trial court erred in admitting the Valley Recycling sales receipt for 105 pounds of copper wire. Last, does sufficient evidence support the jury's verdict finding that Johnson entered and remained in a railway car with an intent to commit a crime in violation of the second degree burglary statute, RCW 9A.52.030(1). We hold that a locomotive is a railway car, the Valley Recycling receipt was admissible to show Johnson's intent, sufficient evidence supports the jury's verdict, and affirm Johnson's conviction.

Statutory Interpretation
¶ 3 A person commits the crime of second degree burglary when, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a "building." RCW 9A.52.030(1). The term "building" has a particularized meaning. As defined in RCW 9A.04.110(5), "`Building,' in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." (Emphasis added.) Johnson argues that the term "railway car" does not include a locomotive. We disagree.
¶ 4 In addressing whether a locomotive is a "railway car" and, therefore, a "building" as defined in RCW 9A.04.110(5), we review the meaning of a statutory definition de novo, as an issue of law. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003). When a statutory term is undefined, absent a contrary legislative intent, we give the words of a statute their ordinary meaning, and we may look to a dictionary for such meaning. State v. Gonzalez, 168 Wash.2d 256, 263-64, 226 P.3d 131, cert. denied, ___ U.S. ___, 131 S.Ct. 318, 178 L.Ed.2d 207 (2010). A statute is ambiguous if it is subject to two or more reasonable interpretations. State v. McGee, 122 Wash.2d 783, 787, 864 P.2d 912 (1993). A possible but strained interpretation is not reasonable and will not render a statute ambiguous. See McGee, 122 Wash.2d at 787, 864 P.2d 912; State v. Brooks, 157 Wash.App. 258, 262, 236 P.3d 250 (2010); State v. Leek, 26 Wash.App. 651, 656, 614 P.2d 209, review denied, 94 Wash.2d 1022, 1980 WL 153251 (1980); see also, Tesoro Refining & Marketing Co. v. Dep't of Revenue, 164 Wash.2d 310, 320, 190 P.3d 28 (2008) (stating that the fact that a party can conceive of an alternative interpretation does not render the statute ambiguous); Cerrillo v. Esparza, 158 Wash.2d 194, 203-04, 142 P.3d 155 (2006) (stating that, "For a statute to be ambiguous, two reasonable interpretations must arise from the language of the statute itself, not from considerations outside the statute.").
¶ 5 Understandably, whether a locomotive falls within the statutory definition of "any railway car" is an issue of first impression. First, we observe that under the plain language of RCW 9A.04.110(5), the entering or remaining with an intent to commit a crime in "any . . . railway car" (emphasis added) is a violation of RCW 9A.52.030. "Any" refers to "one, some, or all indiscriminately of whatever quantity" or "the maximum or *14 whole of a number or quantity." Webster's Third New International Dictionary 97 (2002).
¶ 6 Applying these principles, the term "any . . . railway car" includes a locomotive of the sort at issue here. Although Webster's Dictionary does not define "railway car," it does define "railroad car": "[A] vehicle adapted to the rails of a railroad . . . and used for carrying passengers and mail, baggage, freight, or other things." Webster's Third New International Dictionary 1876 (2002) (emphasis added). A locomotive is a vehicle that is designed to travel on railroad tracks and it carries many "things" including but not limited to an engine, fuel to propel the locomotive and other railway cars, and a conductor, and thus qualifies as a "railway car."
¶ 7 In addition, a locomotive also meets the definition of a railway car as articulated by our Supreme Court in a previous version of the statute. Our Supreme Court appeared to limit the definition of "railway car" by excluding flatcars in an earlier version of the statute in State v. Petit, 32 Wash. 129, 130-31, 72 P. 1021 (1903):
[Flat] cars, it seems to us, do not come within the definition given by the statute, which evidently had relation to box cars, or some kind of a car that is inclosed so that an entry can be made. Under the ordinary understanding of the words "break and enter" it is difficult to see how a person could break and enter a flat car loaded with wheat upon which a canvas is laid.
(Emphasis added.) The Petit court's analysis suggests that the determination of whether something is a "railway car" is whether a structure, which can ride on railroad tracks, is enclosed and can be entered. But the legislature's subsequent codification of a new definition of "building," including the addition of a "fenced area," undermines Petit's implied enclosure element. Laws of 1975, 1st Ex. Sess., ch. 260. Regardless, a locomotive is a fully-enclosed structure that travels on railroad tracks and, therefore, qualifies as a "railway car" under the Petit court's analysis.
¶ 8 Moreover, even if a locomotive is not a railway car, it still qualifies as a "building" for the purposes of second degree burglary. Here, the trial court instructed the jury that, "The term `building,' in addition to its ordinary meaning, includes any railway car." Clerk's Papers (CP) at 18 (emphasis added). When analyzing the general understanding of "building" under the burglary statute, Washington courts have determined that structures or premises that are (1) enclosed, (2) large enough to enter, and (3) able to accommodate a human being, definitively qualify as a "building." State v. Miller, 91 Wash.App. 869, 872-73, 960 P.2d 464 (1998), review denied, 137 Wash.2d 1012, 978 P.2d 1100 (1999); State v. Deitchler, 75 Wash.App. 134, 138 n. 5 & n. 6, 876 P.2d 970 (1994), review denied, 125 Wash.2d 1015, 890 P.2d 20 (1995). Here, the locomotive was fully enclosed with outside doors that allowed access to an interior area that could accommodate a human being. Therefore, the locomotive at issue here also qualified as a "building," under its ordinary meaning, as defined by the legislature in the second degree burglary statute.
¶ 9 Accordingly, under the plain language of the statutory definition of "building," which includes "any . . . railway car," a locomotive is a railway car and building under RCW 9A.04.110(5) for purposes of second degree burglary. RCW 9A.52.030(1). Johnson's claim that evidence showing he unlawfully entered the locomotive with the intent to steal copper is insufficient to prove that he entered a "building" as defined in RCW 9A.04.110(5) and, therefore, is insufficient to support the jury's verdict finding him guilty of second degree burglary fails.

Evidence Admissibility
¶ 10 Johnson also argues that the trial court abused its discretion in admitting a receipt showing that he sold 105 pounds of copper wire to Valley Recycling the day before his arrest. He characterizes the evidence as irrelevant or as a prior bad act inadmissible under ER 404(b). We disagree.
¶ 11 We review the admission of evidence under ER 404(b) for an abuse of discretion. State v. Foxhoven, 161 Wash.2d 168, 174, 163 P.3d 786 (2007). The trial court abuses its *15 discretion when its decision is manifestly unreasonable or rests on untenable grounds or reasons. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)
¶ 12 To convict Johnson of second degree burglary as charged, the State was required to prove beyond a reasonable doubt that Johnson entered the railway car intending to commit theft. Assuming, which we do not, that the sales receipt for copper wire was character evidence[1] and not, as the trial court found, documentary evidence of a copper sale Johnson made the day before his arrest, the trial court admitted the receipt as circumstantial evidence of Johnson's motive or intent and instructed the jury on the limits of its use.[2] As such, the evidence was both relevant and admissible under ER 404(b) and the trial court did not abuse its discretion by admitting it.

Sufficiency of Evidence
¶ 13 Last, Johnson challenges the sufficiency of the evidence supporting his conviction. We hold sufficient evidence exists and affirm.
¶ 14 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational jury could find the essential elements of a crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the verdict and interpreted strongly against the defendant. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn" from it. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Circumstantial evidence is no less reliable than direct evidence and "specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). The jury is the sole and exclusive judge of the evidence. State v. Bencivenga, 137 Wash.2d 703, 709, 974 P.2d 832 (1999). Our role as the reviewing court is not to reweigh the evidence and substitute our judgment for that of the jury. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). Instead, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of evidence. State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533, review denied, 119 Wash.2d 1011, 833 P.2d 386 (1992).
¶ 15 Here, while on routine patrol of the railroad yard, a Grays Harbor police officer arrested Johnson as he ran from inside a railway car. Inside the locomotive, police found Johnson's flashlight and a bag with tools (bolt cutters, ratchets, a pipe wrench, and a hammer) necessary to cut and remove copper wire from the locomotive's interior. The evidence proving Johnson's guilt on the second degree burglary charge is overwhelming, and we affirm.
I concur: HUNT, P.J.
VAN DEREN, J. (dissenting).
¶ 16 I respectfully dissent on the issues of ambiguity of the definition of "railway car" and sufficiency of the evidence and concur on *16 the issue of admissibility of Bradley Johnson's sale of wire to Valley Recycling, Inc. on the day before his arrest.
¶ 17 The State charged Johnson with second degree burglary, alleging that he "enter[ed] and remain[ed] unlawfully in a building . . . to wit: a railway car." Clerk's Papers at 1. I would hold that RCW 9A.04.110(5)'s reference to "railway car" is ambiguous.
¶ 18 Second degree burglary requires unlawful entry or remaining "in a building other than a vehicle or a dwelling."[3] RCW 9A.52.030(1). "`Building' in addition to its ordinary meaning, includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." RCW 9A.04.110(5) (emphasis added). The statute does not define the term "railway car."[4] Whether a locomotive falls under the term "railway car" in RCW 9A.04.110(5) presents an issue of first impression.
¶ 19 When a statutory term is undefined, absent a contrary legislative intent, we give the words of a statute their ordinary meaning, and we may look to a dictionary for such meaning. State v. Gonzalez, 168 Wash.2d 256, 263, 226 P.3d 131, cert. denied, ___ U.S. ___, 131 S.Ct. 318, 178 L.Ed.2d 207 (2010). "A statute is ambiguous if it is subject to two or more reasonable interpretations." State v. McGee, 122 Wash.2d 783, 787, 864 P.2d 912 (1993). When there are two possible interpretations of an ambiguous statute, the rule of lenity requires that we strictly construe the statute in favor of the criminal defendant. State v. Riles, 135 Wash.2d 326, 341, 957 P.2d 655 (1998).
¶ 20 An ordinary meaning analysis of the term "railway car" indicates that a locomotive does not fall under the definition of that term. Webster's Dictionary[5] does not define the term "railway car," but does define "railroad car," under "car," as "a vehicle adapted to the rails of a railroad . . . and used for carrying passengers and mail, baggage, freight, or other things." Webster's Third New International Dictionary 334 (2002) (emphasis added). The distinction between a railroad car and a locomotive is underscored by the definition of a "locomotive" as "a self-propelled vehicle . . . operating under a single control, running on rails . . . and used for moving railroad cars."[6] Webster's at 1329 (2002) (emphasis added).
¶ 21 In State v. Wentz, 149 Wash.2d 342, 351, 68 P.3d 282 (2003), our Supreme Court suggested that the legislature intended to encompass both an "engine car" and a "cargo car" within the term "`railway car'" in dicta. Wentz dealt with whether the legislature intended to modify the antecedent statutory term "fenced area" with the phrase "used for *17 lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods." Wentz, 149 Wash.2d at 351-52, 68 P.3d 282. It concluded that a "fenced area" need not be "used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods" for it to qualify as a "`building'" under the burglary statute.[7]Wentz, 149 Wash.2d at 351-52, 68 P.3d 282.
¶ 22 In arriving at this conclusion, the court discussed burglary committed in other "hypothetical spaces." Wentz, 149 Wash.2d at 351, 68 P.3d 282. These "hypothetical spaces" included other undefined antecedent terms such as "`railway car'" and "`vehicle.'" Wentz, 149 Wash.2d at 351, 68 P.3d 282. As applied to "`railway car,'" the court noted that a contrary conclusion would have the following "unnecessarily limiting" result: "[I]f [a] person broke into a train's engine car, he could not be charged with first degree burglary[, but] it would be first degree burglary if he unlawfully entered a cargo car on the same train." Wentz, 149 Wash.2d at 351, 68 P.3d 282. This is exactly the issue in this case which must be dealt with in more than passing dicta.[8]
¶ 23 The only other reference by our Supreme Court, under a previous burglary statute,[9] has held that a "railroad car" refers to "box cars, or some kind of car that is [e]nclosed so that an entry can be made."[10]State v. Petit, 32 Wash. 129, 130, 72 P. 1021 (1903).
*18 ¶ 24 Thus, the Wentz dicta and the Petit construction of a previous statute suggest that a locomotive is a "railway car." On the other hand, the ordinary, dictionary definition of "railway car" does not encompass "locomotive." Accordingly, I would hold that whether a locomotive falls under the phrase "railway car" is subject to more than one reasonable interpretation and, thus, is ambiguous.
¶ 25 We adopt the interpretation of an ambiguous statute that is most favorable to the criminal defendant. Riles, 135 Wash.2d at 341, 957 P.2d 655. Here, this would dictate a holding that a locomotive is not a "railway car" under the burglary statute. Thus, there was insufficient evidence to find Johnson guilty of second degree burglary. Accordingly, I would reverse and remand for judgment of dismissal with prejudice. State v. Rodgers, 146 Wash.2d 55, 60, 43 P.3d 1 (2002).
NOTES
[1] Johnson cites Foxhoven, 161 Wash.2d at 174, 163 P.3d 786, to support his proposition that, although not a prior bad act, the receipt was offered as evidence of his bad character. But in Foxhoven, the court addressed the admissibility of evidence under ER 404(b) to show modus operandi. 161 Wash.2d at 175-79, 163 P.3d 786. In contrast, here the court admitted evidence of the sales receipt as evidence of a previous transaction, the sale of 105 pounds of copper wire to Valley Recycling, as evidence of intent and motive.
[2] The trial court instructed the jury that "[e]vidence has been presented concerning the defendant's alleged possession of a receipt for sale of copper wire. Such evidence may be considered by you insofar as you believe that it may bear upon the defendant's intent and motive in this matter and for no other purpose." CP at 20.
[3] RCW 9A.52.030(1) provides: "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling."
[4] The majority contends that the legislature's use of "any" to modify "railway car" demonstrates that "`any . . . railway car' includes a locomotive of the sort at issue here." Majority at 13-14 (quoting RCW 9A.04.110(5)). But, as our Supreme Court has observed, "The word `any' must necessarily be read in the context of the rest of the relevant statutory language, and often will not, by itself, disclose the meaning of a statute." State v. Westling, 145 Wash.2d 607, 612 n. 2, 40 P.3d 669 (2002).

As the majority correctly notes, "`Any' means `one, some, or all indiscriminately of whatever quantity' or `the maximum or whole of a number or quantity.'" Majority at 13-14 (quoting Webster's Third New International Dictionary 97 (2002)). But this case does not present the quantitative issue of whether some or all railway cars fall under the plain language of RCW 9A.04.110(5). Rather, the issue is whether a "locomotive" qualitatively falls within the term "railway car." Thus, reliance on the word "any" offers no guidance in this case.
[5] We do not consider "Dictionary.com," to which the defendant refers, an authoritative source. Br. of Appellant at 8.
[6] Although not controlling, a Florida court held that the legislative history of a statute on burglary of a conveyance revealed that the term "railroad cars" was amended to "railroad `vehicles'" because of "a perceived ambiguity" that "apparently prevented some burglary prosecutions of persons entering railroad locomotives." Franklin v. State, 887 So.2d 1063, 1082 n. 28 (Fla. 2004); see also Hernandez-Molina v. State, 860 So.2d 483, 490 (Fla.App. 4 Dist.2003). Thus, the Florida courts and legislature would likely agree with Johnson that the term "railway car" is ambiguous.
[7] Accordingly, the court held that there was sufficient evidence to support Wentz's conviction for first degree burglary where the victim's backyard was surrounded by a six foot, solid wood fence with padlocked gates and "the State need not show that the fenced area was used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods when prosecuting a person for burglarizing a fenced area." Wentz, 149 Wash.2d at 351-52, 68 P.3d 282.
[8] Statements made in the course of the Supreme Court's reasoning that go beyond the facts before the court and are "wholly incidental" to the basic decision constitute obiter dictum and do not bind us. See Burress v. Richens, 3 Wash.App. 63, 66, 472 P.2d 396 (1970); see also In re Estate of Burns, 131 Wash.2d 104, 113, 928 P.2d 1094 (1997); see also D'Amico v. Conguista, 24 Wash.2d 674, 683, 167 P.2d 157 (1946); see also State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 92 (3d Cir.2009). But when a statutory interpretation is essential to the decision, it is not dicta. Wagg v. Estate of Dunham, 146 Wash.2d 63, 73, 42 P.3d 968 (2002). The Wentz court had already reasoned and reached its conclusion on the definition of "`fenced area,'" when it further elaborated its conclusion by applying it to "hypothetical spaces" such as "`railway car[s]'" and "vehicle[s]." 149 Wash.2d at 350-51, 68 P.3d 282. The Wentz court could have achieved this elaboration by applying its conclusion only to "vehicle[s]" or some other antecedent statutory term and omitting any mention of "railway car[s]." Thus, the Wentz court's consideration of the "hypothetical space[]" of a railway car was incidental and not essential to its holding and is dicta. Wentz, 149 Wash.2d at 351, 68 P.3d 282.

Statements in a case that do not relate to an issue before us and are unnecessary to decide the case also constitute dicta. See Burns, 131 Wash.2d at 113, 928 P.2d 1094; Burress, 3 Wash. App. at 66, 472 P.2d 396. The issue in Wentz was whether the phrase "used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods" modified the term "fenced area," whereas the issue before us is whether a locomotive falls under the ordinary meaning of "railway car." 149 Wash.2d at 351-53, 68 P.3d 282. We need not address whether the State must show that the locomotive was "used for lodging of persons or for carrying on business therein, or for the use, sale or deposit of goods" when prosecuting Johnson for burglarizing a railway car. Wentz, 149 Wash.2d at 351-52, 68 P.3d 282. Thus, even though the Wentz issue is related to our inquiry, it is not necessary for our decision and is dicta.
[9] The definition of "burglary" in Petit was:

"Every person who shall unlawfully enter in the night time, or shall unlawfully break and enter in the day time, any dwelling house or outhouse thereunto adjoining, and occupied therewith, or any office, shop, store, warehouse, malt house, still house, mill, factory, bank, church, school house, railroad car, barn, stable, ship, steamboat, water craft, or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit within the body of any county, with intent to commit a misdemeanor or felony, shall be deemed guilty of burglary."
Petit, 32 Wash. at 130, 72 P. 1021 (emphasis added) (quoting Sec. 7104, 2 Ballinger's Ann. Codes & St.).
[10] Accordingly, the Petit court excluded from the term "railroad car" an "ordinary flat car which is used by railroad companies for the transportation of wheat" and was covered by tarpaulin "evidently not for the purpose of forming part of an [e]nclosed structure, but principally to protect the grain from the inclemency of the weather, and possibly to assist in a measure in keeping the sacks on the car from shifting their places." 32 Wash. at 130, 72 P. 1021.