FILED
COURT OF APPEALS
DIVISION II

2013 MAR -5 AM 9: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42080-5-II |
| Respondent, | |
| v. | |
| KELVIN D. NASH, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Kelvin D. Nash appeals his convictions for first degree burglary, second degree assault, making a false or misleading statement to a public servant, and second degree possession of stolen property. Nash argues (1) the trial court erroneously admitted evidence of other acts, thus warranting reversal of his burglary conviction, and (2) insufficient evidence supports his conviction of second degree possession of stolen property. In a pro se statement of additional grounds (SAG), Nash further argues that (3) he received ineffective assistance of counsel because his attorney failed to challenge a juror who Nash claimed to recognize. We disagree and affirm Nash's convictions.

## FACTS

Kelvin Nash was charged with four counts arising from two separate incidents. In one incident, Nash was found at night inside a professor's office at the University of Washington Tacoma. The other incident involved Nash's possession of a conference telephone that had been stolen from UW Tacoma.

At about 8:50 PM on March 11, 2010, a campus security officer at UW Tacoma was making rounds through the faculty office area. He observed that a professor's office door was open, the lights inside were off, and a rustling sound was coming from inside. He stepped into the doorway as Nash stood up from the chair inside.

Nash gave conflicting explanations of why he was in the office. Nash said he had heard a noise coming from the office and entered to investigate. He also claimed he entered the professor's office while looking for a bathroom. Nash had a backpack with him, but he had not taken any property from the professor's office. In response to questions from security officers, he gave a false name and said he was the university's new hip-hop instructor.

When the campus security officers called Tacoma police, Nash attempted to leave; the officers blocked him from leaving, and a physical struggle ensued. One campus security officer suffered three fractures to his eye socket, and another received minor wounds. As a result of this incident, the State charged Nash with first degree burglary, second degree assault, and making a false or misleading statement to a public servant.

Nash was also tried for a separate incident involving a conference telephone. As a gift, Nash once gave Wendy Rupnow a DVD (digital versatile disc) player. Rupnow noticed that the

DVD player had a sticker indicating it was inventory of UW Tacoma. Rupnow then returned the DVD player to Nash.

Rupnow was removing Nash's belongings from a storage locker they shared, when she found a conference telephone, also bearing a UW Tacoma inventory sticker. Rupnow called UW Tacoma and reported that she had the conference telephone, which she believed Nash had stolen. The conference telephone had been missing from UW Tacoma since November 2008.

The State charged Nash with second degree possession of stolen property relating to the conference telephone. Nash pled not guilty to all four charges.

During jury voir dire, Nash told his counsel he recognized several members of the venire, including juror 6. However, Nash did not recall how he knew juror 6 or provide any other details to his counsel. Nash's counsel did not challenge the juror for cause, nor did he tell the trial court or the State that Nash claimed to recognize the juror. Instead, Nash's counsel "specifically wanted Juror [6] on the jury." Clerk's Papers (CP) at 91. The trial court empaneled juror 6.

Before trial, the State sought an evidentiary ruling under ER 404(b) allowing it to introduce evidence of conduct that resulted in Nash's prior conviction for a burglary at North Seattle Community College. The State gave an offer of proof that, after business hours, a security officer at North Seattle Community College found Nash sleeping on a couch in a day care. Nash was wearing only his underwear; his clothes were in a nearby dryer. Nash asked to use the bathroom before attempting to flee. When Seattle police found him, Nash had a backpack containing a computer that had been taken from an office at the college; on his person were a master key to the college, a credit card in the college's name, and a blank college-employee identification card. The State argued that this evidence could show that Nash intended

to steal when he was in the professor's office at UW Tacoma, that he had a common scheme or plan to steal from colleges, and that he had not entered the professor's office by mistake while searching for a bathroom.

The trial court ruled that this evidence was not admissible as part of the State's case in chief, in light of the risk of misleading the jury. But the trial court stated that it could reconsider the admissibility of this evidence depending on the evidence Nash produced at trial.

At trial, the State elicited testimony from Patrick Pow, the director of information technology at UW Tacoma, to establish the value of the conference telephone. On direct examination, Pow testified as follows:

Q. How much does a conference telephone like this cost?
A. About $750.
Q. At the time it was stolen in November of 2008, was that the approximate value of the phone?
A. Yes, I believe.
Q. Was the value of the phone more than $250?
A. Yes.

Report of Proceedings (Feb. 9, 2011) (RP) at 111-12. Pow further testified that UW Tacoma resumed its use of the conference telephone upon its recovery and that, according to his employee, its replacement cost was $757.19. Nash did not object to Pow's testimony on the conference telephone's value or cost, and Nash did not dispute the value of the phone.

Nash testified in his own defense. He stated that he entered the UW Tacoma building to use the restroom and that he entered the professor's office to investigate a sound he heard. After direct examination, the trial court granted the State's request to question Nash about the incident at North Seattle Community College. The trial court found that the evidence of other acts had

4

become "more probative than prejudicial" on the issues of Nash's intent and the absence of mistake or accident. RP (Feb. 10, 2011) at 26-27.

The trial court also admitted evidence of Nash's acts with respect to the DVD player he had given to Rupnow, ruling that the evidence showed intent and absence of mistake or accident. Further, the trial court admitted evidence of the conference telephone, but not under ER 404(b); instead, the trial court admitted this evidence to show an element of possession of stolen property.

The State proposed two limiting instructions, one for the testimony about the DVD player and another for the evidence of Nash's burglary at North Seattle Community College. Nash opposed any limiting instruction regarding the DVD player, fearing that it would only emphasize the evidence. Accordingly, the trial court did not give an instruction about the DVD player. The trial court instructed the jury to consider the evidence of the prior burglary only for Nash's intent and the absence of mistake or accident, and not for any other purpose.

In closing argument, the State mentioned the evidence of Nash's prior burglary at North Seattle Community College. First, the State paraphrased the jury instruction that the jury could consider this evidence only to decide what Nash intended when he entered the professor's office and whether Nash entered the office by accident or mistake. The State then urged the jury to infer Nash's intent from the evidence that "[w]hen the defendant was found in North Seattle Community College, he was in a building, he fled the building, and he had stolen property on him." RP (Feb. 10, 2011) at 144. Next, the State noted that a campus security officer testified that Nash said he entered the professor's office while looking for a bathroom; the State argued

that the North Seattle Community College burglary showed that Nash had not entered the

professor's office by mistake. The State concluded this line of argument by stating,

> Look at the prior possession at North Seattle Community College, possession of property stolen from the school. [Nash] had a credit card, a faculty ID card, master key, and a laptop computer. Common sense, ladies and gentlemen. You're all reasonable people.

RP (Feb. 10, 2011) at 144. Nash did not object to the State's closing argument.

The jury found Nash guilty of all four counts. After the verdict but before sentencing,

Nash claimed to remember that he recognized juror 6 from a life skills class they attended

together. Nash filed a pro se motion for a new trial, alleging that his counsel was ineffective for

failing to challenge juror 6 at voir dire and that her presence on the jury was an irregularity. The

trial court then allowed Nash's counsel to withdraw and appointed a new attorney to represent

Nash and investigate his claims. On the basis of agreed facts, the trial court denied Nash's

motion.[1]

Nash appeals.

---

[1] The parties agreed on seven facts: (1) During voir dire, Nash told his counsel that he recognized juror 6. (2) The venirepersons were asked whether they knew any of the participants in the trial, including Nash. Juror 6 did not indicate that she knew Nash. (3) "[T]here is no independent evidence that supports [Nash]'s claim" to know juror 6. (4) Nash claims he met juror 6 when they both attended a life skills class in King County. (5) Nash and his counsel did not inform the trial court or the State of Nash's claim to know juror 6, until after the verdict. (6) Nash's counsel chose not to reveal Nash's claim to know juror 6 because counsel wanted juror 6 on the jury. (7) "Neither the defense nor the State can find any case law that would support [Nash]'s pro se motion." CP at 90-91.

ANALYSIS

I. EVIDENCE OF OTHER ACTS

Nash argues that this court should reverse his conviction for first degree burglary because the trial court erred in allowing the State to question Nash about two other acts: his attempt to give Rupnow a DVD player bearing a UW Tacoma sticker and the conduct at North Seattle Community College that led to his prior burglary conviction.[2] The State contends that Nash waived his objection to the testimony about the DVD player and that the trial court did not err under ER 404(b). We agree with the State.

A.      *Waiver of Objection to DVD Player Evidence*

The State argues that, by declining a limiting instruction, Nash waived his objection to the evidence that Nash attempted to give Rupnow a DVD player. Nash does not contest this argument.

If a limiting instruction could eliminate any unfair prejudice resulting from the admission of evidence, then a party's failure to request a limiting instruction waives any objection to the evidence. *State v. Christopher*, 114 Wn. App. 858, 865, 60 P.3d 677 (2003) (quoting *State v. Ramirez*, 62 Wn. App. 301, 305, 814 P.2d 227 (1991)). When the trial court admits evidence

---

[2] Nash also asserts that unfair prejudice outweighed the probative value of evidence showing that he possessed a conference telephone with a UW Tacoma sticker, and therefore the trial court violated ER 404(b) when admitting the conference telephone as evidence. But the State did not offer this evidence under ER 404(b). Instead, the State offered this evidence to show that Nash committed second degree possession of stolen property, for which it was extremely probative. Thus, to the extent Nash argues that the trial court erred by admitting evidence of the conference telephone under ER 404(b), this argument is without merit. Evidence admitted to prove one count may be considered as to any other count to which it is relevant, unless the trial court instructs the jury otherwise. *See State v. Bradford*, 60 Wn. App. 857, 861-62, 808 P.2d 174 (1991). Nash did not request a limiting instruction on the conference telephone.

under ER 404(b), a proper limiting instruction can eliminate the danger of unfair prejudice. *See State v. Lough*, 125 Wn.2d 847, 864, 889 P.2d 487 (1995). Here, the State proposed an instruction limiting the purpose of the evidence of the DVD player; however, Nash refused the instruction to avoid emphasizing the evidence. The trial court gave a limiting instruction for the evidence of the prior burglary at North Seattle Community College, but it did not mention the DVD player. Therefore Nash's objection to the DVD player evidence is waived.

B.    *ER 404(b)*

Nash argues that the trial court erred by ruling that the evidence of Nash's burglary at North Seattle Community College was (1) more probative of Nash's intent than prejudicial, (2) admissible to show a common scheme or plan,[3] and (3) admissible to show absence of mistake or accident. We disagree.

This court reviews a trial court's admission of evidence under ER 404(b) for an abuse of discretion. *State v. Dennison*, 115 Wn.2d 609, 628, 801 P.2d 193 (1990). The trial court abuses its discretion when its decision is manifestly unreasonable or rests on untenable grounds or untenable reasons. *State v. Johnson*, 159 Wn. App. 766, 773, 247 P.3d 11 (2011).

Evidence of a person's other acts is never admissible to prove the character of a person to show that he acted in conformity with his character on a particular occasion. ER 404(b).

---

[3] By asserting that the trial court admitted the evidence to show a common scheme or plan, Nash misstates the record; in fact, the trial court never admitted evidence to show a common scheme or plan. The trial court allowed the State to question Nash about the North Seattle Community College burglary to prove Nash's intent and the absence of mistake or accident. In the jury instructions, the trial court admonished the jury not to consider this evidence "for any other purpose." CP at 47.

However, evidence of a person's other acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b).

Before admitting evidence of other acts, a trial court must (1) find by a preponderance of the evidence that the other acts occurred, (2) identify the purpose for which the evidence will be admitted, (3) determine that the evidence is relevant to prove an element of a crime charged, and (4) weigh the probative value of the evidence against the danger of unfair prejudice. *Lough*, 125 Wn.2d at 853; *see* ER 401, 403, 404(b). ER 403 requires a trial court to exclude evidence if the danger of unfair prejudice substantially outweighs its probative value. *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986).

Here, the trial court initially denied the State's pretrial ER 404(b) motion, ruling that evidence of the conduct that resulted in Nash's prior conviction for burglary at North Seattle Community College was not admissible as part of the State's case in chief in light of the risk of misleading the jury. But the trial court stated that it would reconsider the admissibility of this evidence depending on the testimony. After Nash testified on direct examination, the trial court granted the State's request to question Nash about the conduct resulting in his prior burglary conviction to show Nash's intent and the absence of mistake or accident.[4] The trial court gave a

---

[4] Citing *State v. Brush*, 32 Wn. App. 445, 448, 648 P.2d 897 (1982), Nash claims that he "did not 'open the door' to inadmissible ER 404(b) evidence because he did not place his character at issue." Br. of Appellant at 9. This claim misstates the record: Nash *did* place his character at issue. He testified, "I pride myself on being a do-gooder," and explained that was why he investigated a sound he heard coming from the professor's office. RP (Feb. 10, 2011) at 74. Nash also testified that, after his son was born in 2006, he "turned it around" and became a more responsible person. RP (Feb. 10, 2011) at 86-87. This testimony opened the door to evidence rebutting Nash's assertions about his character.

limiting instruction, admonishing the jury not to consider Nash's acts in the burglary for any other purpose.

As the trial court explained, when Nash testified that he entered UW Tacoma intending only to use the bathroom and then entered the professor's office intending to investigate a sound he heard, he enhanced the probative value of evidence that he had previously been found at North Seattle Community College after business hours with stolen items in his possession. The trial court determined that the evidence became "very probative of [Nash's] intent." RP (Feb. 10, 2011) at 26. Likewise, the trial court also ruled that the evidence was probative of whether Nash entered the professor's office by mistake. Further, the trial court's limiting instruction minimized the danger of unfair prejudice, because jurors are presumed to follow the trial court's instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982). After Nash's testimony, the trial court found that the evidence of other acts had become "more probative than prejudicial" on the issues of Nash's intent and the absence of accident or mistake. RP (Feb. 10, 2011) at 26-27. The trial court did not abuse its discretion.

Nash further claims that the trial court erroneously admitted the evidence because, during closing argument, the State argued that it showed Nash acting in conformity with his character, while "couching [this argument] in terms of 'intent' and 'absence of mistake.'" Br. of Appellant at 13-14. But the State did not argue that Nash acted in conformity with his character. The State argued the evidence for the purpose the court allowed: intent and absence of mistake. Moreover, the trial court instructed the jury to consider the evidence for no other purpose. Thus Nash's argument fails.

## II. SUFFICIENCY OF THE EVIDENCE

Nash further argues that the evidence was insufficient to convict him of second degree possession of stolen property because it failed to show that the property's fair market value exceeded $250. Again, we disagree.

To ascertain the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010). An appellant, when challenging the sufficiency of the evidence, admits the truth of the State's evidence and all reasonable inferences from it. *Drum*, 168 Wn.2d at 35. The evidence is sufficient if any rational fact finder could find that the State has proved every element of the offense beyond a reasonable doubt. *Drum*, 168 Wn.2d at 34-35.

Here, Nash challenges only the State's proof of the value of the conference telephone. To convict Nash of second degree possession of stolen property, the State had to prove that the conference telephone's value exceeded $250. *See* Former RCW 9A.56.160(1)(a) (2008).[5] "'Value' means the market value of the property . . . at the time and in the approximate area of the act." CP at 74; *see* RCW 9A.56.010(21)(a). A property's market value is the price a well-informed buyer would pay to a well-informed seller. *State v. Longshore*, 141 Wn.2d 414, 429, 5 P.3d 1256 (2000).

The State may prove a property's value by direct or circumstantial evidence, and evidence of the price paid for property is entitled to great weight. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). Testimony about the value of property at the time of the

_____

[5] Effective September 1, 2009, second degree possession of stolen property requires the value to exceed $750. RCW 9A.56.160(1)(a) (amended by LAWS OF 2009, ch. 431, § 13). Nash was charged with possessing stolen property between November 2008 and June 2009.

No. 42080-5-II

offense is sufficient for a jury to find the property's market value. *State v. Ehrhardt*, 167 Wn. App. 934, 945, 276 P.3d 332 (2012); *see State v. McPhee*, 156 Wn. App. 44, 65, 230 P.3d 284, *review denied*, 169 Wn.2d 1028 (2010). Evidence of a property's replacement cost is generally inadmissible, except that it may prove the value of a property that has no market value. *State v. Clark*, 13 Wn. App. 782, 788, 537 P.2d 820 (1975) (quoting 52A C.J.S. *Larceny* § 118 (1968)).

Nash argues that the State failed to "produce evidence of the market value of the used property at the time of the theft." Br. of Appellant at 17. This argument misstates the record. Here, Pow testified that, at the time of the theft, the approximate value of the conference telephone was $750. Pow further testified that the value of the phone at that time exceeded $250. That testimony was sufficient for the jury to find that the phone's market value exceeded $250. *See Ehrhardt*, 167 Wn. App. at 945. Thus there was sufficient evidence to convict Nash of second degree possession of stolen property.

Nash further argues that Pow's testimony is "dubious hearsay" because Pow relayed his employee's statement of the phone's replacement cost.[6] Br. of Appellant at 17. But in calling this testimony "dubious," Nash ignores the standard of review, which requires this court to consider the evidence in the light most favorable to the State. *Drum*, 168 Wn.2d at 34. Pow testified that the replacement cost of the conference telephone was $757.19. This testimony is also substantial evidence that the phone's value exceeded $250. Nash's argument fails.

---

[6] Nash does not challenge the admissibility of this testimony.

12

III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his pro se statement of additional grounds, Nash argues that he received ineffective assistance of counsel because his attorney did not challenge a juror who Nash claimed to recognize. We disagree.

This court reviews ineffective assistance of counsel claims de novo. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 490, 251 P.3d 884 (2010). In reviewing claims of ineffective assistance, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A person claiming ineffective assistance of counsel has the burden to establish that counsel's performance both (1) was so deficient that it deprived the defendant of his constitutional right to counsel and (2) prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700; *Hendrickson*, 129 Wn.2d at 78.

Nash's SAG can be read to assert two acts of ineffective assistance: (1) failure during voir dire to challenge juror 6, who Nash claimed to recognize, and (2) failure to seek a new trial after the verdict, when Nash remembered the context from which he recognized juror 6.

First, Nash argues that his counsel gave ineffective assistance during voir dire by failing to challenge juror 6, who Nash claimed to recognize. This argument fails because the counsel's performance was not deficient. Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101

13

P.3d 80 (2004). An attorney's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

At voir dire, Nash told his counsel that he recognized juror 6 but "couldn't readily recall how or where [he] knew her from." SAG at 2. When the trial court asked the venirepersons whether they knew the defendant, juror 6 did not indicate that she knew Nash. CrR 6.4(c)(1) does not require an attorney to challenge a venireperson for cause, and Nash's counsel chose not to challenge juror 6. Instead, Nash's counsel "specifically wanted juror [6] on the jury," CP at 91, because he had reasons to believe that juror 6 would be "a good defense juror." RP (Apr. 22, 2011) at 5. Identifying venirepersons who may be receptive to a party's arguments is a legitimate trial tactic, when done within the limits of voir dire's scope and purpose. Accordingly, the conduct of Nash's counsel at voir dire was a legitimate trial tactic, not a deficient performance. *See Kyllo*, 166 Wn.2d at 863. Nash's failure to establish that his counsel was deficient is fatal to this argument. *See Strickland*, 466 U.S. at 700; *Hendrickson*, 129 Wn.2d at 78.

Second, Nash apparently argues that his counsel gave ineffective assistance by failing to move to set aside the verdict once Nash remembered that he and juror 6 had taken a life skills class together. This argument fails because Nash suffered no prejudice from his counsel's inaction.

Prejudice occurs when, but for counsel's deficient performance, the outcome would have differed. *Reichenbach*, 153 Wn.2d at 130. Nash asserts that, after he realized that he recognized juror 6 from a life skills class, his counsel declined to bring this information to the trial court's attention. Nash then filed a timely pro se motion for a new trial, alleging irregularity in

empaneling juror 6 as a juror and ineffective assistance of counsel. The trial court allowed Nash's counsel to withdraw and appointed new counsel to investigate the allegation and represent Nash. After taking steps to investigate, Nash's new attorney told the trial court, "I do not believe that there is a basis for a motion for a new trial." RP (Apr. 22, 2011) at 6. The trial court denied the motion. Because the trial court and Nash's new counsel concluded that there was no basis for a new trial, the refusal of Nash's original counsel to seek a new trial had no effect on the outcome. Thus there was no prejudice. *See Reichenbach*, 153 Wn.2d at 130. Here, Nash's failure to show prejudice is fatal to his argument. *See Strickland*, 466 U.S. at 700; *Hendrickson*, 129 Wn.2d at 78. Accordingly, Nash cannot carry his burden to show ineffective assistance of counsel.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Bjorgen, J.