

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67958-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| WILLIAM SCOTT GOBAT, | ) | |
| | ) | FILED: April 29, 2013 |
| Appellant. | ) | |

SPEARMAN, A.C.J. — William Gobat appeals his conviction for second degree felony murder. Gobat, along with two others, assaulted a man who owed a $30 drug debt and killed him. Gobat argues that the evidence is insufficient to support his conviction. We disagree and affirm.

## FACTS

Sometime in December 2010, Emily Clausen, a drug dealer, asked her friend William Gobat to deliver cocaine to Donald Barker. Gobat met Barker, gave him the drugs, and received an apparent roll of cash in exchange. When Clausen later opened the roll, instead of the expected $30 payment, she found only a $1 bill rolled around a receipt. Clausen was angry.

Some weeks later, on December 27, Gobat was at Clausen's house along with Antonio Ruiz, Patrick Griffiths, and Griffith's girl friend, Cara Jean Ford. At about 5:00 p.m. Griffiths, Ruiz, and Gobat left Clausen's house together in Griffiths' car.

Following Clausen's instructions, they went to an elementary school near her house to meet someone and collect money. When they arrived at the school, all three got out of the car. They saw a person waving at them from across the school grounds some distance away. It was Barker.

According to Griffiths, as the three walked toward Barker, they did not discuss what they would do, but spread out as they approached as if to encircle him. When they reached Barker, Gobat punched him in the face. Ruiz and Griffith joined in the assault.

Barker broke away and ran toward the parking lot. Gobat and Griffths chased him, but Gobat fell and Griffiths caught up to Barker first. Barker overpowered Griffiths, pushed Griffiths to the ground and held him there to restrain him. When Gobat and Ruiz reached them, they pulled Barker off Griffiths. Griffiths heard Gobat say "[W]here's the money?" and saw that Barker was on all fours on the ground. Verbatim Report of Proceedings (VRP) at 284. Griffiths saw Barker's cell phone fall to the ground, picked it up, and walked back to the car. Gobat and Ruiz also returned to the car moments later and the three drove back to Clausen's house.

Shortly thereafter, a passerby heard Barker call for help and called 911. Medics transported him to the hospital but he was pronounced dead on arrival. Barker sustained blunt force trauma to the head which caused hemorrhaging in the brain. He also sustained a stab wound on his lower back and one in the abdomen which pierced his liver. Barker's death was caused either by the blunt force trauma or by the stab wound that lacerated the liver.

2

Meanwhile, when Gobat, Ruiz, and Griffiths arrived at Clausen's house, Ford was doing laundry. They asked if they could put their clothes in with Ford's laundry. She would not let them and so they washed their clothes in the shower. Ruiz gave Ford a knife and asked her to hide it.

Ford and Clausen later cleaned the knife and Ford wrapped it in a bag. Clausen took it later that night when she, Gobat, and Ford went to a casino. When Ford returned to Clausen's house that night, Ruiz showed up and described how he stabbed Barker. Ruiz told Ford the others did not know about the stabbing.

The State charged Gobat with second degree felony murder based on the predicate crime of second degree assault. Griffiths and Ford testified at Gobat's trial.[1] Gobat also testified in his defense. Gobat said he did not know they were meeting Barker at the school. Gobat said he recognized Barker when he got close to him and asked, "Do I know you?" Barker gave him an angry expression and hit him. According to Gobat, he returned the punch, then lost his footing and fell. Gobat said Barker ran away and Griffiths chased him. Worried that the commotion would cause someone to call the police, Gobat said he pulled Griffiths off Barker and told him "[w]e need to get out of here." RP at 471-72. Both Griffiths and Gobat denied knowing that Ruiz was armed.

The jury found Gobat guilty as charged. Gobat appeals.

---

[1] Griffiths pleaded guilty to first degree robbery.

No. 67958-9-I/4

## ANALYSIS

Gobat challenges the sufficiency of the evidence supporting the jury's verdict finding him guilty of second degree murder. He argues that the evidence is insufficient because the State failed to prove that he acted with knowledge that he was facilitating a murder.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the jury's verdict, any rational jury could find the essential elements of a crime beyond a reasonable doubt. State v. Johnson, 159 Wn. App. 766, 774, 247 P.3d 11 (2011). All reasonable inferences from the evidence must be drawn in favor of the jury's verdict and interpreted strongly against the defendant. Johnson, 159 Wn. App. at 774. "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn'" from it. Johnson, 159 Wn. App. at 774 (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

In applying this standard of review, circumstantial evidence is no less reliable than direct evidence and "'specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability.'" Johnson, 159 Wn. App. at 774 (quoting State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)). The jury is the sole and exclusive judge of the evidence. Johnson, 159 Wn. App. at 774. We do not reweigh the evidence or substitute our judgment for that of the jury. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Because they observed the witnesses testify first hand, we defer to the jury's resolution of

4

conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness and the appropriate weight to be given the evidence. See State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Gobat of second degree felony murder, the State was required to prove beyond a reasonable doubt that he (1) committed or attempted to commit a felony, (2) "and, in the course of and in furtherance of" committing that felony, he or another "participant" (3) caused Barker's death. RCW 9A.32.050(1)(b). Because the alleged predicate felony is second degree assault, the State also had to prove beyond a reasonable doubt that Gobat or an accomplice, intentionally assaulted Barker and thereby recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a). A person acts intentionally when he acts "with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

Here, in order to convict Gobat of second degree felony murder based on accomplice liability, the State was required to prove beyond a reasonable doubt that, with knowledge that it would promote or facilitate the commission of the second degree assault that resulted in Barker's death, Gobat (1) solicited, commanded, encouraged, or requested another person to commit the crime; or (2) aided or agreed to aid another person in planning or committing the crime. RCW 9A.08.020; State v. McCreven, 170 Wn. App. 444, 477-78, 284 P.3d 793 (2012), review denied, 176 Wn.2d 2015, __ P.3d __, (2013). Accomplice liability requires an overt act. State v. Matthews, 28 Wn. App. 198, 203, 624 P.2d 720 (1981). Mere presence is insufficient to prove complicity in a crime. State v. Roberts, 80 Wn. App. 342, 355-56, 908 P.2d

5

892 (1996). To be an accomplice to felony murder based on a predicate felony of second degree assault, the accused must have known generally that he was facilitating a criminal assault but need not have known that the principal was going to use deadly force or that the principal was armed. Sarausad v. State, 109 Wn. App. 824, 836, 39 P.3d 308 (2001); State v. Rice, 102 Wn.2d 120, 125, 683 P.2d 199 (1984).

Viewing the evidence in favor of the State as we are required to do, sufficient evidence supports Gobat's felony murder conviction, as either a principal or an accomplice. Based on Griffiths' testimony, the jury could infer that Gobat was a principal. In fact, testimony indicated that Gobat instigated the assault by throwing the first punch and demanding money from Barker. At the very least, the evidence that Gobat hit Barker in the face was sufficient to show that he acted with knowledge that his presence would promote or facilitate the assault on Barker.

Relying on State v. Cronin, 142 Wn.2d 568, 14 P.3d 752 (2000) and State v. Roberts, 142 Wn.2d 471, 14 P.3d 713 (2000), Gobat argues that in order to support his conviction for felony murder as an accomplice, the State was required to prove that he, rather than Ruiz or Griffiths, caused Barker's death or that he acted with knowledge that he was facilitating a homicide. Gobat's reliance on Cronin and Roberts is misplaced.

The co-defendants in Roberts and Cronin were each convicted of both felony murder and premeditated first degree murder. In each case, the accomplice liability instruction provided to the jury was legally deficient because it permitted the jury to

convict the defendant based on knowing facilitation of some crime other than the charged crime. Roberts, 142 Wn.2d at 510; Cronin, 142 Wn.2d at 576-77. In their respective appeals, the defendants' premeditated first degree murder convictions were reversed, but their felony murder convictions were affirmed. See Roberts, 142 Wn.2d at 478, 534; Cronin, 142 Wn.2d at 582, 586. The defendants' felony murder convictions were unaffected by the erroneous instructions because "where the undisputed evidence shows that all the participants acted as principals in committing the predicate felony, an accomplice liability instruction is superfluous, for the felony murder statute itself expressly establishes the complicity of both the killer and nonkiller participant in the homicide, as principals." State v. Bolar, 118 Wn. App. 490, 503, 78 P.3d 1012 (2003).

In contrast to accomplice liability for premeditated murder, the knowledge required to convict a defendant for felony murder is based solely on the mens rea for the predicate offense. As the Court in Roberts observed:

> Thus, the State is technically correct in its statement that "you would not be able to obtain accomplice liability to certain murders because certain murders happen too quickly for a person to actually know a murder is going on--an accomplice to know a murder is going to happen." This is relatively insignificant, however, because such defendants may still be charged with felony murder in the first degree based solely on the mens rea for the predicate offense.

Roberts, 142 Wn.2d 471, 511 n. 14 (internal citations omitted).

The felony murder statutes contain built-in vicarious liability to provide a mechanism by which liability for a homicide may be imputed to a coparticipant who

7

does not actually commit the homicide.[2] State v. Carter, 154 Wn.2d 71, 79, 109 P.3d 823 (2005). So when one participant in a predicate felony, alone, commits a homicide during the commission of, or flight from, such felony, another participant in the predicate felony has, by definition, committed felony murder. The State was not required to prove that the blow to the head inflicted by Gobat killed Barker. Moreover, "[i]n such cases, the State need not prove that the nonkiller participant was an accomplice to the homicide." Cater, 154 Wn.2d at 79; Bolar, 118 Wn. App. at 500-06.

Accomplice liability is relevant here only to the extent that it ties Gobat to the predicate felony of second degree assault. And to prove Gobat's guilt based on the theory of accomplice liability, the State was required to establish only that Gobat knew he was facilitating an assault and that assault resulted in Barker's death. Because the evidence supports Gobat's conviction for felony murder either as a participant or an accomplice, we affirm.

_____, A.C.J.

WE CONCUR:

_____

_____

---

[2] The first and second degree felony murder provisions are the same in this respect. RCW 9A.32.030(1)(c); RCW 9A.32.050(1)(b).