**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79411-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| EMELEY GONZALEZ, | |
| Appellant. | |

LEACH, J. — Emeley Gonzalez appeals her conviction for trafficking in stolen property in the first degree. She challenges the sufficiency of the evidence to prove she knew the property sold was stolen. Because the record contains sufficient evidence from which a rational juror could find that she did know the property was stolen beyond a reasonable doubt, we affirm.

BACKGROUND[1]

Mary Lucero is an elderly widow who lived alone in her long-time residence at the time the events involved in this case happened. She has dementia. It has impacted her short-term memory causing her to repeat herself and forget things. Her condition made her "overly trusting" and impaired her judgment. Because she could no longer drive a car, she relied on friends and family to get around. Mary had poor insight into her dementia and she did not recognize her cognitive decline. Mary's family hired Amy Astle-

---

[1] Because we are reviewing the sufficiency of the evidence, we describe the facts in the light most favorable to the State. State v. Luther, 157 Wn.2d 63, 77-78, 134 P.3d 205 (2006).

Citations and pincites are based on the Westlaw online version of the cited material.

Raaen, a social worker specializing in geriatric health to assist with her care. Significant to this case, Mary's long-term memory remained intact. At trial, she provided lucid testimony about her family and the history of the watch involved in this case.

Despite her progressive condition, Mary maintained an active lifestyle. She received friends in her home, hiked, bowled with her family, attended church, and often walked in the neighborhood to socialize. Mary's activities included attending a fitness class for the elderly several times a week at a local YMCA. There, she met Emeley Gonzalez who attended the same class.

Gonzalez was about 20 years younger than Mary. She could not speak due to an injury, but she communicated with Mary through gestures and written notes. Gonzalez told Mary she was a surgeon, but she was not a surgeon. They became friendly and Gonzalez would sometimes drive Mary home from the fitness class. When Gonzalez came into Mary's home, she surprised Mary with how she moved around the home and went through the refrigerator. While Mary did not rebuke Gonzalez for this, in order to avoid insulting her, she felt wary that Gonzalez felt "so free in [her] house."

During one visit, Gonzalez brought small plastic bags and offered to "sort" Mary's jewelry. Mary later realized that all her valuable jewelry, including a gold watch her deceased husband had purchased for her many years ago, and her wedding rings were missing and only the inexpensive costume jewelry remained.

Mary told Astel-Raaen about Gonzalez. Their conversation made Astel-Raaen concerned that Gonzalez was taking advantage of Mary. She reported her concerns to Mary's daughter-in-law who shared this information with Mary's adult son, Danny Lucero.

2

Danny went to his mother's home and talked with her about Gonzalez. Danny then looked for Mary's jewelry and found that "all her important stuff was gone." He assumed that Mary had hidden it somewhere in the home and enlisted the entire family to look for the missing items. None of the missing jewelry was found at that time or later when Mary moved and the whole house was emptied.

Danny had known his mother to make gifts of money, but she never gifted any of her jewelry. So, he reported his concerns to Detective Lievero of the Normandy Park Police Department. Lievero then interviewed Mary at her home. Lievero observed that Mary could not recall some details, but she was lucid during the interview and had no difficulty understanding the purpose of his questions. During a follow-up interview weeks later, Mary provided an account consistent with her first interview.

Lievero searched a database that records pawn transactions to see if Gonzalez had transferred any jewelry. He learned that Gonzalez had recently sold several items of jewelry to Bellevue Rare Coins.

The manager of Bellevue Rare Coins, Deidre Burleson, handled this sale. She testified that Gonzalez sold her a 14-caret gold Logines woman's watch for $295.50 and some gold earrings. Gonzalez told Burleson the jewelry belonged to her cousin. Lievero identified the watch as Mary's by comparing it to old appraisal photos in the family's possession. Danny and Mary also both identified the watch as Mary's.

The State charged Gonzalez with trafficking in stolen property in the first degree. At trial, Gonzalez testified that as a thank you gesture for driving her, Mary gave her the watch as a gift. She also denied telling Burleson anything when she sold the watch. She

also testified that she was not aware Mary had dementia and never saw any evidence of it.

ANALYSIS

Gonzalez makes one claim on appeal, that the State failed to present sufficient evidence to allow a jury to find she knew the watch was stolen.

When reviewing a defendant's challenge to the sufficiency of the evidence in a criminal case, Washington appellate courts review the record, viewing the evidence in the light most favorable to the State, to determine whether any rational jury could find the essential elements of the crime beyond a reasonable doubt.[2] We draw all reasonable inferences from the evidence in favor of the State and strongly against the defendant.[3] A claim of insufficiency admits the truth of the State's evidence and all inferences reasonably drawn from it.[4] We consider circumstantial evidence as reliable as direct evidence.[5] We defer to the jury to resolve conflicting testimony, determine witness credibility, weigh evidence, and draw reasonable inferences from the testimony.[6]

Gonzalez admits that she sold the watch. The only element at issue is whether she knew the watch was stolen. The State had to prove she had actual knowledge, not just that she "should have known" the watch was stolen.[7] Washington courts recognize

---

[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Salinas, 119 Wn.2d at 201.
[4] State v. Salinas, 119 Wn.2d at 201.
[5] State v. Johnson, 159 Wn. App. 766, 774, 247 P.3d 11 (2011).
[6] State v. Thomas, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004).
[7] State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).

the State can rarely prove guilty knowledge through direct, positive evidence, but must usually rely on circumstantial evidence.[8]

Here, a jury could reasonably infer that Gonzalez knew the watch was stolen when she sold it. Mary clearly testified that she did not give Gonzalez the watch and she did not remember giving Gonzalez anything:

> Q    Did you give this watch to Emely Gonzalez?
> A    No, I did not.
> Q    And did you give any other jewelry to Emely Gonzalez, any other jewelry of yours?
> A    I don't recall giving her any. That one day I remember we sorted out my jewelry. Not that – it wasn't my good jewelry. It was my cheaper jewelry. And she brought little bags to put them in as we sorted them out. But I don't remember giving her any.
> Q    Okay.
> A    I don't think she asked for any.
> Q    Did she ask for anything else from your house, or did you give her any other gifts?
> A    I don't remember giving her anything.

Mary recalled the watch, when and from whom she received it, and the sentimental value it had. From this, a jury could reasonably infer that Mary would not give this watch away, particularly not to someone she had known only casually for a few months.

Gonzalez also made statements from which a jury could reasonably infer that she lacked credibility. She told Mary that she was a doctor when she was not. According to Burleson, Gonzalez lied to her about the source of the watch. Burleson testified that establishing ownership is one of the first things she does when dealing with a prospective seller. Gonzalez did not provide the jury with any explanation to why Burleson would

---

[8] State v. Salzman, 186 Wash. 44, 47, 56 P.2d 1005 (1936).

falsely testify. A jury could reasonably infer that Gonzalez lied to Burleson and that this provided evidence of her guilty knowledge.

Gonzalez attacks Mary's credibility, pointing to her dementia and inability to recall things. She made this argument to the jury, but the jury chose to believe Mary and not Gonzalez. An appellate court defers to a jury's decision about witness credibility and does not reweigh the evidence. Reduced to its essential premise, Gonzalez's argument asks this court to decide that no rational juror could believe Mary when she testified that she did not give her watch to Gonzalez. We disagree and affirm the conviction.

## CONCLUSION

We affirm. The record contains sufficient evidence for a jury to find the essential elements of trafficking in stolen property in the first degree beyond a reasonable doubt.

_Leach, J._

WE CONCUR:

_____                _Appelwick, J._